SETH M. MILLIKEN and Others, Copartners, as DEERING, MILLIKEN & COMPANY, Respondents, v. FRISBIE, COON & COMPANY, Defendant, Impleaded with THE RICHELIEU COMPANY and Others, Appellants.

First Department, December 29, 1916.

Sales — action to set aside sales of merchandise alleged to have been procured by fraudulent representations to a commercial agency — corporations — conspiracy to deprive corporation of its assets and to establish false credit — false statement to commercial agency by president — liability of directors — when officers estopped from denying knowledge of financial condition of corporation.

In an action to set aside certain sales of merchandise made by plaintiffs to the defendant, a manufacturer of shirts and collars, upon the ground that the sales were procured by fraudulent representations made pursuant to a conspiracy among the defendants on which the plaintiffs relied, it appeared that the defendant, manufacturer of shirts and collars, being insolvent, a reorganization was planned and later effected pursuant to a fraudulent conspiracy of the defendants by which said corporation transferred a greater part of its assets to other defendants and entered into a contract whereby all goods subsequently manufac-

tured should immediately become the property of one of the other defendants, and that by means of false financial statements sought to obtain material and to continue to manufacture for the benefit of the conspirators. The president of the manufacturing corporation made a false statement to a commercial agency on which the plaintiffs claim to have relied in making the sales.

*Held*, on all the evidence, that a judgment in favor of the plaintiffs should be affirmed;

That since the statement given to the commercial agency was largely taken from the books of the corporation all of the defendants who consented to the books being kept with false statements therein must be held responsible for the information given by the president of the manufacturing corporation.

A director of the manufacturing corporation at the time of the transactions complained of, who at various times had held the office of secretary, vice-president and treasurer, if he did not know, had the means of knowing what appeared upon the books of the corporation, and is estopped from denying that he knew the result of the plan to reorganize would in effect relieve the corporation of all its assets.

APPEAL by the defendants, The Richelieu Company and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 28th day of June, 1915, upon the decision of the court after a trial at the New York Special Term, and also from an interlocutory judgment entered in said clerk's office on the 24th day of May, 1915.

*Frank L. Crocker*, for the appellants The Richelieu Company and Oneida Regal Company.

*Ambrose F. McCabe*, for the appellant George A. Frisbie.

*Sherrill Babcock*, for the appellant Sherrill Sherman.

*Selden Bacon*, for the respondents.

McLAUGHLIN, J.:

This action was brought to set aside certain sales of merchandise made by plaintiffs to the defendant Frisbie, Coon & Co., and to procure a return of the same, or in default thereof to recover its value.

The right to maintain the action is based upon allegations to the effect that the sales were procured by fraudulent represen

tations made pursuant to a conspiracy among the defendants, on which plaintiffs relied. The answers put in issue the material allegations of the complaint. The court at Special Term found in favor of the plaintiffs, set aside the sale, directed the entry of an interlocutory judgment and the appointment of a referee to ascertain what, if any, merchandise could be returned, and if none, then that a final judgment be entered for its value. The referee found that none of the merchandise could be returned and thereupon a final judgment was entered against the defendants for its value, interest thereon and costs of the action, amounting in all to $26,775.36.

A statement of the material facts established will demonstrate, as it seems to me, that the conclusion reached by the learned justice sitting at Special Term is correct and that the judgments should be affirmed. From the evidence it appears that plaintiffs, at the time the transactions here involved took place, were engaged in the drygoods business in the city of New York. The defendant Frisbie, Coon & Co. was organized in March, 1909, and was engaged in manufacturing shirts and collars. The defendant Oneida Regal Company was manufacturing hosiery and underwear. The Richelieu Company, a foreign corporation, was organized January 31, 1913, to act as selling agent for Frisbie, Coon & Co. and the Oneida Regal Company. The defendant George A. Frisbie was the president, director and stockholder of Frisbie, Coon & Co. He was also a stockholder of the Oneida Regal Company and its treasurer from its organization until February 1, 1913, when he resigned that office and was elected assistant treasurer. Thereafter he was the assistant and acting treasurer and financial manager. He was also president, a director and stockholder of the Richelieu Company from February 4, 1913. The defendant Sherman was a director of Frisbie, Coon & Co. from its organization, with the exception of the period from December 17, 1909, to April 5, 1911. He was also a stockholder and its treasurer, and during part of the time was its vice-president and secretary. Frisbie, Coon & Co. and the Oneida Regal Company, from their organization to January 1, 1914, were controlled by Frisbie and his associates, including, after August 31, 1912, Campbell, Heath & Co., a firm of bankers who participated in

such control by virtue of being a large creditor of both corporations. In the latter part of 1912 Frisbie, Coon & Co. was insolvent. One of its large creditors was the Oneida Regal Company, to which it was actually indebted in a sum upwards of $550,000. At the same time the Oneida Regal Company was financially embarrassed and its obligations to Campbell, Heath & Co. exceeded $900,000. About this time a so-called reorganization was planned, and later effected, at the direction of Campbell, Heath & Co. To appreciate the purpose of this so-called reorganization it is necessary to refer somewhat in detail to transactions involved therein. In August, 1912, Frisbie, Coon & Co. was indebted to the Oneida Regal Company, according to the latter's books, in the sum of $677,335.52. Of this sum, however, the court found $113,923.61 was a fictitious entry created by the pretended surrender to and cancellation by Frisbie, Coon & Co. of $100,000 of the latter's preferred stock which had been issued to the Oneida Regal Company in April, 1910, and the acceptance, in place thereof, of a promise by Frisbie, Coon & Co. to repay to the Oneida Regal Company the amount paid by it for the stock, with interest thereon from the date of purchase. Such transfer, cancellation and alleged obligation of Frisbie, Coon & Co. to repay were mere entries on the books of the Oneida Regal Company in August, 1912, when Frisbie, Coon & Co. was already insolvent. Such entry was not agreed to by Frisbie, Coon & Co. until February, 1913, about the time of the consummation of the so-called reorganization. On February 21, 1913, Frisbie, Coon & Co. transferred to the Collar City Realty Company, a corporation organized for that purpose in January, 1913, all its real estate, plant, machinery and equipment in exchange for $150,000 in bonds of the realty company, and its entire issue of $75,000 preferred and $100,000 common stock. The trial court found, and I think the evidence sustains the finding, that the property thus transferred did not exceed in value $225,000, and the common stock then was and since has been of no value whatever. Upon receiving the securities, Frisbie, Coon & Co. immediately transferred $100,000 of the bonds to the Oneida Regal Company in partial payment of the general indebtedness to which reference has been made, and

a part of which the trial court found was fictitious, and the remaining $50,000 of bonds to the Utica Trust and Deposit Company, at the price of $47,500, of which over $46,305.63 was used to extinguish prior mortgages held by the Utica Trust and Deposit Company on the real estate transferred as before stated. The $75,000 preferred stock was subsequently pledged as security for the payment of a loan of $45,000. All that Frisbie, Coon & Co. had left, after these transactions, was the worthless common stock of the Collar City Realty Company, about $1,000 realized from the sale of the bonds to the trust company; the money borrowed on the preferred stock — a sum slightly in excess of $46,000, and whatever equity there might be in the preferred stock after the loan had been paid. Immediately following these transactions, Frisbie, Coon & Co. leased from the Collar City Realty Company the property transferred to it at a rental of $40,000 a year, which the court found was at least $10,000 a year more than its reasonable rental value.

On February 5, 1913, Frisbie, Coon & Co. transferred to the Richelieu Company, which, as already said, was organized on January 31, 1913, all the former's finished goods, as well as all its bills and accounts receivable (except worthless accounts), valued at $300,000, in consideration of the issue to Frisbie, Coon & Co. of $100,000 first preferred and $200,000 second preferred stock of the Richelieu Company. All of this stock, as soon as issued, was transferred by Frisbie, Coon & Co. to the Oneida Regal Company in partial payment of the indebtedness to it. In taking over the finished goods, bills and accounts receivable the Richelieu Company agreed to pay to Frisbie, Coon & Co. any sum realized therefrom in excess of $393,000 plus expenses, etc. In spite of the fact that no such excess could possibly be realized, an item of $42,886.67 was entered on the books of Frisbie, Coon & Co. as a charge against the Richelieu Company due for such repayments. In May, 1913, the finished goods were retransferred to Frisbie, Coon & Co., which agreed to pay the Richelieu Company therefor the full price at which it had taken them in exchange for its stock and Frisbie, Coon & Co. thereupon canceled on its books the charge against the Richelieu Company. The goods, however,

were to be held by the Richelieu Company under an agreement to which reference is hereafter made.

On February 8, 1913, Frisbie, Coon & Co. and the Oneida Regal Company entered into an agreement with the Richelieu Company by which the latter was made their sole selling agent for a period of five years, with the option of renewing in five-year periods for an additional forty-five years. The Richelieu Company was to receive, under this agreement, twenty-five per cent of the gross selling price, plus the cost of advertising, insurance, carrying charges and interest on advances and was guaranteed its commission on annual sales of at least $675,000. The discounts on sales ranging from five to seven per cent were also to be borne by Frisbie, Coon & Co. For this contract the Richelieu Company was to pay to Frisbie, Coon & Co. $37,500 in cash and $87,500 in common stock of the former. As a matter of fact the cash payment was never made, but Frisbie, Coon & Co. got instead more common stock of that par value. The Richelieu Company also agreed to advance to Frisbie, Coon & Co. sums not to exceed sixty per cent of the selling price of the goods delivered to it. At no time subsequent to May, 1912, had Frisbie, Coon & Co. been able to manufacture its goods for seventy-five per cent of the gross selling price, but at all times thereafter the cost of manufacture and delivery, plus advertising and carrying charges, had exceeded eighty per cent of the selling price. For the year 1912 the selling cost to Frisbie, Coon & Co. had been less than sixteen per cent of the selling price and yet it had lost money. It was perfectly obvious, therefore, that in order to pay the agreed commission to the Richelieu Company, Frisbie, Coon & Co. would have to manufacture at a very heavy loss. In this connection it is to be observed that under this agreement the Oneida Regal Company was to pay a commission of only twelve and one-half per cent for the sale of its goods.

This was the situation of which the defendants were well aware, or ought to have been, on the 28th of March, 1913, when George A. Frisbie delivered to a representative of R. G. Dun & Company's Commercial Agency a written statement which purported to show the assets and liabilities of Frisbie, Coon & Co., as of January 31, 1913. This statement was false

and must have been known by Frisbie to be false when he delivered it. It was false whether compared with the actual condition of the company on that day or with conditions as they would have been at that time had the so-called reorganization then been effected. This statement showed assets of $744,744.60; liabilities of $721,209, including capital stock $425,000, and a surplus of $23,535.60. As a matter of fact, on the very day the statement was delivered, there was a deficit of $203,425.46, according to the books of Frisbie, Coon & Co., while the actual deficit exceeded $535,000. The discrepancy between the actual deficit and the book deficit was due to an overstatement by more than $200,000 of raw material, supplies and work in process of manufacture, the overvaluation to a large amount of accounts receivable, real estate, buildings, machinery and equipment, and the inclusion of other fictitious items of assets. The statement further failed to set forth correctly the financial condition of the company on January 31, 1913, in that it largely understated the amount of notes and accounts payable and included as assets, stock of the Richelieu Company and the Collar City Realty Company, while in reality on January 31, 1913, Frisbie, Coon & Co. held no stock whatever in either of these corporations. Even upon the theory urged by the respondents that the statement was designed to show conditions that would have existed had the various reorganization transactions been completed on January 31, 1913, it was still false and misleading, because assets were overstated in excess of $340,000; also there was no mention in the statement of the liability under the sales agency contract of the yearly rental obligation of $40,000 to the Collar City Realty Company. It is very significant indeed that within less than five months after the statement was given out more than $325,000 of the assets set forth in it were either charged off to profit and loss, or written off the books as non-existent.

At the time the statement was given out, and at all times thereafter until the sales of merchandise were made, the plaintiffs were subscribers to Dun's reports and on the 4th of May, 1913, for the purpose of determining whether credit should be given to Frisbie, Coon & Co., they requested it to furnish them a statement of the financial condition of that company. In

pursuance of such request a report was furnished, which included the statement given to Dun's Agency by George A. Frisbie. Intermediate the receipt of this report, upon which plaintiff relied, and December 31, 1913, the merchandise in question was sold and delivered.

A statement of the foregoing facts is sufficient to indicate that the result of the so-called reorganization was to take from Frisbie, Coon & Co. substantially all of its assets and transfer the same to the Richelieu Company and the Collar City Realty Company, and then, in turn through the Oneida Regal Company to Campbell, Heath & Co., with the net result that Frisbie, Coon & Co., then doing business at a loss, had no property with which to respond to the claim of its creditors. Indeed, none of the appellants seem seriously to question the fact that the reorganization did, in fact, accomplish the result stated, or that the statement furnished to Dun by Frisbie was false. But it is urged by the Richelieu Company and the Oneida Regal Company that the judgment should be reversed, principally upon the grounds that (a) the plaintiffs did not rely in making the sale upon the statement; and (b) the evidence did not establish a conspiracy among the defendants to defraud the plaintiffs. The trial court found as a fact that the plaintiffs did rely in making the sale on the false statement; that such sale would not have been made except they believed it to be true; and that such false statement was chargeable to all of the defendants.

I am satisfied, after a careful consideration of the record, that these findings are sustained by the evidence. I do not see how any other conclusion can be reached after the dealings of these parties with the different concerns in which they were interested, and the manner in which they kept their books, are considered. Books of account are designed to show, if honestly kept, assets and liabilities; in other words, the true financial condition of the party for whom such books are kept. False entries in books can have but one purpose, viz., to mislead and deceive parties who have no actual knowledge of the true situation. All of the appellants had access to the books of Frisbie, Coon & Co., and it is fairly to be inferred had actual knowledge of the false and fictitious entries made therein.

Such books could not have been kept in the manner indicated without the agreement or acquiescence of the appellants. The statement given to Dun was largely taken from the books, and I think all of the appellants who consented to the books being kept in that way must be held responsible for the statement given out by Frisbie. He knew the statement was asked for to enable persons dealing with Frisbie, Coon & Co. to determine whether or not credit should be given. He was not only chargeable with his own act, but I think the parties for whom he was acting were also chargeable with and responsible for it. It is true Frisbie testified that he did not intend, in giving out the statement, to defraud the plaintiffs. The answer to such suggestion is that he is presumed to have intended the natural and probable result of his acts, which were, so far as the record goes, to obtain merchandise from the plaintiffs for Frisbie, Coon & Co. when they were financially irresponsible.

It is also strenuously urged that the evidence fails to connect Sherman with any fraud which makes him responsible to the plaintiffs. I am unable to appreciate the force of this suggestion. He was a director of Frisbie, Coon & Co. at the time the transactions complained of took place and at various times held the office of secretary, vice-president and treasurer. He attended the meetings of the board of directors, was present when the reorganization scheme — including the sole sales agency contract — was put through, and took an active part in bringing about such reorganization plan. If he did not know what the situation was it was his own fault. He certainly knew, or had the means of knowing, what appeared upon the books, and is now estopped from denying that he knew the result of the plan of reorganization, when carried out, would, in effect, denude Frisbie, Coon & Co. of all its assets. He also knew that merchandise was thereafter to be bought on credit, and if a statement were asked for and taken from the books by a prospective creditor, such statement would be false and could be given out only for the purpose of misleading and deceiving.

Certain errors in the admission of evidence are urged by both Frisbie and Sherman. The admission of this evidence, even though erroneous, could in no way have affected the judg-

ment.    It is amply sustained by the findings, which are sustained by other evidence.

. Sherman also urged that certain findings and refusals to find, so far as he is concerned, are not sustained by the evidence, but these findings are immaterial.    They are not necessary to nor do they in any way affect the decision upon which the judgment depends.

My conclusion is that the findings of fraud and conspiracy are amply sustained by the evidence, and that the judgments appealed from should be affirmed against all the appellants, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and DAVIS, JJ., concurred.

Judgment affirmed, with costs.