AFRICAN METALS CORPORATION et al., Appellants, *v.* RALPH J. M. BULLOWA et al., Respondents, Impleaded with Others.

Argued March 18, 1942; decided April 23, 1942.

*Spencer Pinkham, Henry F. Holthusen* and *Charles E. Oberle* for appellants. The appellants are entitled to every favorable inference which may be drawn from the evidence. (*Meiselman* v. *Crown Heights Hospital, Inc.,* 285 N. Y. 389; *McNally* v. *Phœnix Ins. Co.,* 137 N. Y. 389.) The appellants proved a *prima facie* case against the respondents. (*Natelson* v. *A. B. L. Holding Co.,* 260 N. Y. 233; *Meiselman* v. *Crown Heights Hospital, Inc.,* 285 N. Y. 389.) Since the trial court found that plaintiffs had proved a *prima facie* case against the corporate defendant, it erred in dismissing the complaint as to the individual defendants. (*Simon* v. *Lowenthal,* 169 Misc. Rep. 718; *Wheatley* v. *Boyce,* 165 Misc. Rep. 512.)

*Nathan L. Miller, William A. Marden* and *James Nevins Hyde* for respondents. The appellants made their payments in reliance solely on the documents. (*Almirall & Co.* v. *McClement & Co.,* 207 App. Div. 320; 239 N. Y. 630.) Having pleaded and proved that the corporation was a principal, and having proceeded to judgment against it as such, appellants cannot recover against the

respondents on the same complaint on the ground that the corporation was the respondent's agent. (*Georgi* v. *Texas Co.*, 225 N. Y. 410; *Canaday Cooler Co.* v. *Staten Island S. Co.*, 234 App. Div. 451.) There is no allegation or evidence that the respondents used the corporation as a mere agent or instrumentality to transact their own business or to defraud. (*Quaid* v. *Ratkowsky*, 183 App. Div. 428; 224 N. Y. 624; *Almirall & Co.* v. *McClement & Co.*, 207 App. Div. 320; 239 N. Y. 630; *Salvin* v. *Myles Realty Co.*, 227 N. Y. 51; *Jenkins* v. *Moyse*, 254 N. Y. 319; *Berkey* v. *Third Ave. Ry. Co.*, 244 N. Y. 84.)

FINCH, J. This action was tried before a justice and jury against the defendants Ralph J. M. Bullowa, John H. Teeter, Stephen J. Meade and The Meade Steel & Metals Company, Ltd.

At the close of the case of plaintiffs, the court granted motions by the individual defendants to dismiss the complaint as to them and reserved decision on a similar motion by the corporate defendant. The corporate defendant then rested and the court directed verdicts in favor of the several plaintiffs against the corporate defendant. Plaintiffs appealed to the Appellate Division from the judgment entered upon the dismissal of the complaint as to the individual defendants. The corporate defendant did not appeal. The Appellate Division affirmed the judgment in so far as it dismissed the complaint against defendant Bullowa, with the presiding justice and another dissenting; unanimously affirmed the judgment in so far as it dismissed the complaint as against the defendant Teeter; reversed, directed a severance of the action and ordered a new trial as to defendant Meade. Leave was granted by the Appellate Division to appeal to this court from that portion of the judgment in favor of defendant Teeter and plaintiffs have appealed, as of right, to this court from the judgment in so far as it affirmed the dismissal of the complaint as to the defendants Bullowa and Teeter and severed the action. Defendant Meade did not appeal to this court.

The causes of action in the complaint numbered 1, 3 and 5 allege that plaintiffs purchased from defendants five carloads of material represented to be pure nickel cathodes of which three carloads were purchased by plaintiff African Metals Corporation, and one each by the other two plaintiffs; that plaintiffs paid defendants therefor

an aggregate amount of $152,399.50; that when received, the material turned out to be junk consisting of parts of old automobiles and other scrap iron of no value, and that plaintiffs promptly notified defendants thereof, rescinded their respective contracts, offered to return the junk and demanded their money back. The sufficiency of these allegations has been settled. (*Seneca Wire & Mfg. Co.* v. *Leach & Co.*, 247 N. Y. 1.) The causes of action numbered 2, 4 and 6 contain an additional allegation of scienter. The answers contain mere general denials.

As the complaint was dismissed at the end of the case of plaintiffs, they are entitled upon this appeal to assume the establishment by adequate evidence of every issue upon which they rely concerning which there is some evidence, and the motion to dismiss should not have been granted in the trial court unless upon any issue there can be said to be in support thereof no evidence and no substantial inferences. (*Meiselman* v. *Crown Heights Hospital*, 285 N. Y. 389; *McNally* v. *Phœnix Ins. Co.*, 137 N. Y. 389.)

About a year before the transactions in suit, these three defendants Bullowa, Teeter and Meade, had formed a corporation called The Meade Steel & Metals Company, Ltd. Defendant Bullowa had put up the original capital, through the purchase of an issue of preferred stock of the par value of $5,000, which issue, however, had been retired, and the money of Bullowa returned to him prior to the transactions herein involved. At the time of these transactions not only was the capital of this corporate defendant limited to $75, with 75 shares of common stock of a par value of $1 each, which were equally divided among the three defendants, but its bank account, during the three months' period, showed a balance in February of only $5.69, $19.28 in March and apparently was closed out in April. The total assets of the corporation were $2,110.98, with total liabilities of $1,487.98, and a net worth of $623. The transactions in suit involved more than $150,000 and the corporation possessed no credit facilities. The only reason for setting forth these facts and figures is to show evidence and inferences in connection with the purchase as hereinafter specified.

Defendant Teeter was a partner in a well-known firm of stockbrokers, and had long acted for defendant Bullowa in connection with his financial matters. Defendant Meade had a background

of experience in dealing in scrap metals. It is a fair inference from the facts that the operating arrangement between these individual defendants was that defendant Bullowa would put up the money, defendant Teeter would act as banker in handling, arranging for and disbursing the money, and defendant Meade would negotiate the purchase and sale of the metal. In January, 1936, Bullowa and Teeter sent Meade to Canada, and his expenses were subsequently paid by Teeter with funds furnished by Bullowa, where he negotiated with one Meyer Brenner in Toronto looking toward the purchase, if his testimony is credible, of some pure electrolytic nickel cathodes. These negotiations resulted in an agreement or a sale.

On January 31, 1936, defendant Bullowa opened a special account with the stockbrokers, Goadby & Co., by a deposit of $25,000 which, in accordance with his custom, was actually managed by defendant Teeter. This account and every cent in it belonged to defendant Bullowa personally. From this account, as noted, were paid the expenses of Meade in going to and from, and while in Canada.

A few days after the opening of this " Bullowa M " account, and early in February, 1936, defendant Meade approached an officer of appellant African Metals Company, offering to sell some pure electrolytic nickel cathodes of which he produced some samples which he represented came from packing cases which he had seen packed and loaded in a railroad car covered by bills of lading in his possession. On March 5, 1936, Meade wrote a letter in the name of the corporate defendant, making a firm offer to sell to plaintiff African Metals Corporation a car of 63,891 pounds of such nickel cathodes at 44 cents a pound. African Metals made a return offer of $43\frac{1}{2}$ cents which on March seventh was accepted by a letter in the name of the corporate defendant, sent by Meade, confirming the sale and enclosing a bill of lading of the Canadian National Railways, issued in the name of one H. Borchers, a stenographer in the employ of the corporate defendant, accompanied by an invoice, a weight certificate and a certificate of analysis by a Canadian analyst. Each of these documents described the material as 99.50% pure electrolytic nickel cathodes. African Metals delivered to Meade on March seventh its check

against these documents in the sum of $27,792.58, to the order of the stenographer, H. Borchers. This check never went into the corporate bank account but was at once endorsed over by Teeter and deposited directly in this personal account of defendant Bullowa marked "Bullowa M." A few days thereafter African Metals purchased two other cars. Meade delivered a similar letter contract and commercial documents, together with an affidavit sworn to by him stating the existence and purity of the nickel cathodes in the cars, and received from African Metals, also to the order of the stenographer, H. Borchers, two checks for $33,231.39 each, or a total of $94,255.36 paid by African Metals Corporation for the three cars. These two checks were also at once endorsed over by Teeter to defendant Bullowa and deposited in the "Bullowa M" account. Meade approached the other two appellants and succeeded in selling them one car each against similar letter contracts and commercial documents. On March twenty-seventh, plaintiff International Selling Corporation delivered its check to Meade to the order of the Meade Steel and Metals Company, Ltd., in the amount of $30,208.79, which was likewise at once endorsed over by Teeter and deposited directly in the "Bullowa M" account. On April first, plaintiff Anglo-American Metal & Ferro-Alloy Corporation delivered its check to Meade, also drawn to the order of Meade Steel & Metals Company, Ltd., in the sum of $27,935.35, which check likewise was endorsed at once by Teeter and deposited directly in the "Bullowa M" account. Defendant Bullowa thus received directly all of the money paid by plaintiffs, while the corporation undertook the obligations. Meade likewise delivered to each of these plaintiffs-appellants sworn affidavits as to the existence in the railroad cars and purity of the nickel cathodes. Defendants arranged to pay Meyer Brenner in Canada the amount of five checks signed by Bullowa on the "Bullowa M" account, in an amount totaling $122,409.79. Thus Meade engineered the purchase in Canada, Teeter managed the bank account and Bullowa furnished the money from this private account, with none of the purchase price of the materials in Canada coming out of the corporate bank account, and none of the moneys paid by plaintiffs ever going into that account. Also, the ordinary operating expense of the corporate defendant, as the expense of

the trips of Meade to Canada, were managed by Teeter and paid for by Bullowa out of the " Bullowa M " account. None of the moneys in this account were disbursed for any other purpose than the one connected with this transaction. According to the record there was no note, agreement or writing of any kind between Bullowa or the other individual defendants and the corporate defendant, nor did defendant Bullowa ever have possession or a lien upon any of the commercial documents, and he testified that he " did not lend the money to the corporate defendant." $152,399.50 was paid into the " Bullowa M " account by plaintiffs-appellants. $122,409.79 was paid out to Brenner for the five cars sold. This left a profit to defendant Bullowa on the transactions involved herein of $29,989.71. Immediately upon learning that the material received was junk instead of the pure electrolytic nickel cathodes, as Meade swore he had seen packed and loaded into the cars, plaintiffs-appellants notified all the defendants in writing of their determination to rescind the contracts and each appellant demanded a return of the purchase price paid by it and thereafter brought an action at law as upon an executed rescission demanding judgment for these amounts.

Since the court at Special Term directed a verdict, the question involved is whether the plaintiffs made out a *prima facie* case, not whether they will be ultimately entitled to judgment when all the evidence is in, *i. e.*, may we say as a matter of law that there is no evidence or inferences from the evidence that these plaintiffs are entitled to recover upon any theory. The Appellate Division has found, upon what seems in this record preponderating evidence, not only that the complaint as against defendant Meade should not have been dismissed at the close of the case of plaintiffs, but that the jury could have found that the causes of action for fraud asserted by each of these plaintiffs were established by the evidence as against defendant Meade and that the plaintiffs may rescind the contracts because of these misrepresentations. Indeed, in the briefs in this court, these respondents do not even urge that Meade was not guilty of intentional fraudulent misrepresentations. Added to these findings of fact by the Appellate Division, there is ample evidence from which a jury could find that Meade, Bullowa and Teeter were joint coadventurers in this enterprise, and were

each equally responsible for the acts of the others. (*Downey* v. *Finucane*, 205 N. Y. 251.) The law is settled that in an action for rescission in equity, or in an action at law based upon an executed rescission, the principal becomes liable to restore the consideration even though the representations made by the agent are innocent. (*Seneca Wire & Mfg. Co.* v. *Leach & Co.*, 247 N. Y. 1.) There is substantial evidence, therefore, upon which these plaintiffs may base a *prima facie* case to follow the consideration paid.

Also as plaintiffs have alleged in their causes of action numbered 2, 4 and 6, and the Appellate Division upon ample evidence has found that Meade was guilty of fraudulent misrepresentations, and that the contract could be and was rescinded therefor, and the fact that there is also substantial evidence in this record that Meade, Bullowa and Teeter were joint coadventurers, these plaintiffs have made out a *prima facie* case in accordance with these causes of action based on scienter. Where there are a number of promoters, all these coadventurers are liable in damages for the fraud of an agent employed by them to effect the sale of the property owned, without reference to the moral guilt or innocence of those not directly involved in the misrepresentations. (*Downey* v. *Finucane*, 205 N. Y. 251.) We go no further than to hold that sufficient has been shown to make out a *prima facie* case on behalf of these plaintiffs on all the causes of action alleged.

Upon the retrial likewise it may be determined whether the individual defendants may not be held as joint adventurers in a common enterprise carried on by them independently of the corporation. While the law permits individuals to incorporate their business and thus escape personal liability, yet such incorporation does not go further than to exempt the individuals from such business as is carried on by the corporation. Incorporation does not exempt the individuals from liability for an enterprise which they themselves choose to carry on as individuals independently of the corporation. It cannot be said, as a matter of law, upon this record, that there is no evidence or inferences from evidence that these defendants were not joint venturers dealing personally in this enterprise. Judge CROUCH, writing for the court in *Natelson* v. *A. B. L. Holding Co.* (260 N. Y. 233, 238), where the facts were entirely different from the case at bar but the quoted

principle very applicable, said: " It is true that the law permits individuals to incorporate their business as a cover and for the very purpose of escaping personal liability; but the business so incorporated must be carried on by the corporation, not by individuals; and its profits must be available to meet liabilities, before the individuals may share. ' The corporation exists for the legitimate convenience of the stockholders, not as a mere mask for their personal acts and responsibilities.' (*Halsted* v. *Globe Indemnity Co.*, 258 N. Y. 176, 179.)   Tested by this broad rule alone, the judgment below, however ingeniously defended, is wrong " (See, also, *Downey* v. *Finucane*, 205 N. Y. 251.)

During the trial the court committed reversible error in excluding the depositions of two Canadian customs officials who testified that they broke the seals of the cars in transit, inspected the contents, and found junk instead of nickel.   This error alone would be sufficient to require a new trial.

It follows that the judgment of the Appellate Division should be reversed in so far as it affirmed the judgment in favor of defendants and severed the action, and a new trial should be granted as to all the individual defendants, with costs to abide the event, and the action severed accordingly.   (See 288 N. Y. 673.)

RIPPEY, CONWAY and DESMOND, JJ., concur; LEHMAN, Ch. J., LOUGHRAN and LEWIS, JJ., dissent.

Judgment accordingly.