P. S. & A. Realties, Inc., et al., Plaintiffs, *v.* Lodge Gate Forest, Inc., et al., Defendants.

Supreme Court, Special Term, New York County, January 7, 1954.

*Ralph L. Bernstein* for plaintiffs.

*Henry A. Panoff* for Sol G. Atlas, defendant.

*Hyman Grill* for Lodge Gate Forest, Inc., and others, defendants.

WALTER, J.  By written contract of October 4, 1952, defendant Lodge Gate Forest, Inc., agreed to sell to plaintiff William Proopis a plot of ground improved by a one-story building containing seven retail stores, known as 525–537 Plandome Road, Manhasset, Long Island, for $251,000, of which $12,500 was paid upon the signing of the contract, $37,500 was to be paid upon delivery of the deed, $130,000 was to be paid by taking title subject to a mortgage for that amount which the seller was then arranging to obtain from a savings bank, and for the balance of which the purchaser was to give the seller a bond or note for $71,000 secured by a second mortgage upon the property.  In so contracting Proopis was acting for himself and for plaintiffs David T. Sommer and Adolph Austin and the seller was advised of that fact.

The contract was assigned to plaintiff P. S. & A. Realties, Inc., a corporation organized and controlled by the individual plaintiffs, and the purchase was consummated on November 7, 1952, by payment of the $37,500 and the execution of the $71,000 bond and mortgage, and the conveyance of the property to plaintiff P. S. & A. Realties, Inc., which simultaneously conveyed the premises to the individual plaintiffs.

Plaintiffs assert that the purchase was induced by false representations with respect to the tenants of the stores and the terms of their leases, and by this action they seek rescission of the transaction on that ground.

The property was first brought to the attention of Proopis by brokers employed by Lodge Gate Forest, Inc., who gave him a typewritten statement, based on statements made to them by defendant Deitch, describing the property and setting forth that the " rent roll" of the stores was as follows:

| | | |
|---|---|---|
| 1. Records and Music | $3,000 to | 6/ 1/56 |
| 2. Bookshop | 4,200 to | 6/ 1/57 |
| 3. Klix Cleaners (chain) | 2,400 to | 1/31/57 |
| 4. Rhea Nichols Shoes (chain) | 4,200 to | 1/31/57 |
| 5. Kiddy Fair | 3,180 to | 2/28/57 |
| 6. Longley Dresses | 4,200 to | 7/ 1/56 |
| 7. Grand Prix Foreign Motors | 8,400 to | 10/ 1/53, |
| | | $9,000 to |
| | $29,580 | 10/ 1/54 |

Proopis and the brokers drove to the property and looked at it from the outside. It was dark and rainy and the stores were closed, but Proopis says he could see that six of the stores were occupied and one was not occupied.

Proopis and the brokers then went to the home of defendant Deitch, who owned and controlled defendant Lodge Gate Forest, Inc., and who, in answer to the request of Proopis for all information about the property, said, among other things, that the empty store had been rented to Rosemary Crawford, an experienced woman competent to run a bookshop, who had a lease and had paid rent since July, but was then sick in Paris and had cabled him to prepare the store for her occupancy at the end of the month, that the tenants and occupants of the other stores were all good tenants doing good business and paid their rent promptly, and that there were no modifications of or concessions from the existing written leases.

At the conference at the office of the seller's attorney on October 4, 1952, which resulted in the signing of the written contract of purchase, the seller exhibited to the purchaser, and the purchaser initialed, seven leases by the seller to the following tenants on the following terms:

Morec Mail, Inc., 525 Plandome Road, for sale of records and musical instruments, five years, May 1, 1951, to April 30, 1956, $3,000 per year;

Rosemary Crawford, doing business as Crawford Book Shop, 527 Plandome Road, for bookshop, greeting cards, stationery and gifts, five years, July 1, 1952, to June 30, 1957, $4,200 per year;

Klix Cleaners, 529 Plandome Road, for dry cleaning, five years, February 1, 1952, to January 31, 1957, $2,400 per year;

Rhea Nichols Enterprises, Inc., 531 Plandome Road, for shoe-shop, five years, February 1, 1952, to January 31, 1957, $4,200 per year;

Irene Hanrahan, 533 Plandome Road, children's and infants' wear and accessories, five years, March 1, 1952, to February 28, 1957, $3,180 per year;

Mildred E. Longley, doing business as Marion Flack Dress Shop, 535 Plandome Road, dress shop and women's apparel, five years, July 1, 1951, to June 30, 1956, $4,200 per year;

Charles J. P. Kotchan & Co., Inc., 537 Plandome Road, automobile showroom, three years, October 1, 1951, to September 30, 1954, $8,400 per year for first and second years, and $9,000 for third year.

At the closing of title on November 7, 1952, Deitch told Proopis that Rosemary Crawford had found she would be unable to open her bookshop because she had found that she would not be able to obtain a certain line of cards for sale therein, but that he had done Proopis a great favor by getting for him a first-class, highly responsible tenant, Furniture Factory Outlet Corp., which was owned by Mr. Simmons, the head of Simmons Furniture Co.; that a lease of the Crawford store to Furniture Factory Outlet Corp. had been signed but had been inadvertently left at his office and would be sent to him the next day; and Deitch thereupon produced the Crawford lease with a notation on the back signed by Deitch stating that a new lease on the same terms had been executed with Furniture Factory Outlet Corp. It was not until long after the closing, however, that the lease to Furniture Factory Outlet Corp. was actually supplied to the buyers.

Those representations were false in many material respects. The lease to Rhea Nichols Enterprises, Inc., had been accompanied by a letter fixing the rent thereunder at $250 per month for the first year instead of $350 per month, and at $300 per month for the second year instead of $350 per month. The lease to Mrs. Hanrahan had been accompanied by a letter fixing her rental at $200 per month up to February 26, 1953. Charles J. P. Kotchan & Co. had been given a letter waiving rent of their store for October, November and December, 1951, and reducing their rent for the first year of their lease to $600 per month. Rosemary Crawford had not paid any rent and it is at least doubtful if she had signed any lease or ever had any intention of opening a store. She was married to defendant

Deitch on December 18, 1952, and it is at least a fair inference that she and Deitch were contemplating marriage at least as early as October 1, 1952. Deitch says that he was paying the rent for her. Furniture Factory Outlet Corp. was not owned by a Mr. Simmons who was the head of Simmons Furniture Co. It was in reality nothing but another name for defendant Deitch, and what was represented as a lease to it was not in reality a real lease to anyone. Klix Cleaners, also, had been given a concession of $25 per month from the rent stated in the written lease, and they actually had paid $175 per month instead of the $200 specified in the written lease. Mrs. Longley, tenant of No. 535 under lease calling for $4,200 per year, actually had paid no rent other than $150 paid as a deposit when she moved into the store.

Those representations as to the leases, tenants and rentals clearly were material and such as were intended and calculated and likely to influence a prospective purchaser and bring about a sale, and they clearly were relied upon; and the respects in which they were untrue are so material and substantial that their untruth constitutes an adequate ground for rescission (*Thaw* v. *Schwartz*, 303 N. Y. 678; *Windsor Residences* v. *201 East 18th St. Corp.*, 25 N. Y. S. 2d 329; *Shapiro* v. *Kawon Realty Corp.*, 35 N. Y. S. 2d 613; *Sedgefield Holding Co.* v. *440 West End Ave. Corp.*, 228 App. Div. 138; *Kreshover* v. *Berger*, 135 App. Div. 27).

The written contract of sale contains the provision: "Purchaser represents to seller that purchaser has examined the premises * * * is fully satisfied with the physical condition thereof and that neither seller nor any agent or representative of seller has made any representation concerning the condition thereof or the leases or tenancies affecting the same or in regard to any other matter pertinent to this sale, except as expressly set forth in this agreement." But the contract also states that the sale is "subject to seven leases, all of which have been initialed by the purchaser. The seller shall have the right to rent any vacant store now or hereafter existing in said premises prior to the closing of title at rent not less than shown on the said leases and for terms not exceeding five years."

The representation that there were the seven leases above mentioned is thus expressly set forth in the written agreement, and it hence is unnecessary to consider what would be the effect of the clause first quoted in the preceding paragraph hereof if the contract had made no reference to the leases (see, however, *Bridger* v. *Goldsmith*, 143 N. Y. 424; *Angerosa* v. *White*

*Co.*, 248 App. Div. 425, affd. 275 N. Y. 524; *Benedict Co.* v. *McKeage*, 201 App. Div. 161; *Mione Acres* v. *Chatmas Orchards*, 277 App. Div. 425, and *Jackson* v. *State of New York*, 210 App. Div. 115, 119).

By instrument dated and acknowledged March 30, 1953, Lodge Gate Forest, Inc., assigned to defendant Deitch the $71,000 bond and mortgage executed by P. S. & A. Realties, Inc., to Lodge Gate Forest, Inc., at the time of the closing on November 7, 1952; and by another instrument likewise dated and acknowledged March 30, 1953, defendant Deitch assigned that bond and mortgage to Arcadia Knitting Mills, Inc. Inasmuch, however, as those assignments were made after the filing of a notice of the pendency of this action, they do not affect plaintiffs' rights (Civ. Prac. Act, § 121).

Because of that filing of a notice of pendency of action before those assignments were made, this case differs from *Cachules* v. *116 East 57 St.* (N. Y. L. J., Dec. 21, 1953, p. 1517, col. 4), in which I made the broad statement that " a bond and mortgage cannot be canceled in a suit to which the holder thereof is not a party " without qualifying the statement, as I should have done, by a reference to section 121 of the Civil Practice Act.

Defendants make a point of the fact that no assignment of any cause of action for rescission is shown; but as the plaintiffs here include the persons to whom the representations were made, the persons who made the contract of purchase, paid the consideration, and received the seller's conveyance, and the present owners of the property sold, the cause of action for rescission must be vested in one or the other of them and I hence can think of no reason why there should be any assignment of such cause of action. *Fox* v. *Hirschfeld* (157 App. Div. 364), and *Nearpark Realty Corp.* v. *City Investing Co.* (112 N. Y. S. 2d 816), both actually sustain that view.

The object of rescission is to undo the contract and restore each party to the position he was in before the contract was made, as nearly as that can be done; and in this case that means that the $71,000 bond and mortgage should be cancelled, the cash consideration of $50,000 should be repaid to plaintiffs (3 Black on Rescission and Cancellation [2d ed.], § 688), subject to any benefits plaintiffs may have received from the property while in possession of it (9 C. J., Cancellation of Instruments, pp. 1264–1267; 3 Black on Rescission and Cancellation [2d ed.], § 634), and plaintiffs should reconvey the land to the vendor. Return of the consideration upon rescission is not the award of damages suffered by reason of having been induced to make the

contract; it is merely a part of the process of undoing the contract and restoring the *status quo* (3 Black on Rescission and Cancellation [2d ed.], § 616).

Plaintiffs have received from the property rents of $18,700, but to receive them they were put to expense and compelled to pay:

| | | |
|---|---:|---:|
| Fire and liability insurance......... | | $1,488.46 |
| Taxes ......................... | $1,761.67 | |
| | 1,409.65 | |
| | 1,761.66 | |
| | 1,305.14 | |
| | | 6,238.12 |
| Mortgage interest and amortization. | $ 975. | |
| | 2,275. | |
| | 2,275. | |
| | 2,275. | |
| | | 7,800. |
| Repairs and other miscellaneous items of expense ............... | $ 125. | |
| | 300. | |
| | 100. | |
| | | 525. |
| Legal expenses, not including expenses of this action............ | | 1,550. |
| | | $17,601.52 |

Plaintiffs' net benefit from the property thus has been $18,700 less $17,601.52, viz., $1,098.48, and the return of cash consideration to which plaintiffs are entitled is the $50,000 paid less the $1,098.48, net benefit received, viz., $48,901.52, with interest thereon from November 7, 1952.

If repayment of that $48,901.52 with interest could be secured by imposing a lien upon the land, as can be done in some States (3 Black, *supra,* § 694; 9 C. J., Cancellation of Instruments, pp. 1265, 1266), rescission in the conventional form of directing cancellation of the $71,000 bond and mortgage and a reconveyance of the property subject to a lien for return of the $48,901.52 with interest, with appropriate provisions for enforcement of the lien, would afford plaintiffs adequate relief. But the law of New York is that such lien cannot be so imposed (*Davis* v. *Rosenzweig Realty Co.,* 192 N. Y. 128).

Even the device of directing cancellation of the $71,000 bond and mortgage in advance of a reconveyance of the property by plaintiffs, and of making the direction for such reconveyance subject to actual repayment of the $48,901.52 with interest, would not insure adequate relief to plaintiffs because even under such direction repayment of the $48,901.52 with interest might not be made because of the financial inability of Lodge Gate Forest, Inc., to make the payment, and in that event plaintiffs, although holding the property free of the $71,000 bond and mortgage, still would have the property, instead of their money, and would have it with no means of getting their money by forcing a sale of the property in order to raise the money .

It hence is important in this case to consider plaintiffs' further contention that the circumstances here are such that restitution of the $48,901.52 can be decreed against the individual defendants as well as against defendant Lodge Gate Forest, Inc.

So far as defendant Deitch is concerned, I think there is little, if any, difficulty. He made the misrepresentations which induced the contract and which justify its rescission. He made them, it is true, as an officer of Lodge Gate Forest, Inc., and on its behalf, but I think the making of them was also a personal wrong, just as much as a corporate officer's refusal to return to the rightful owner chattels in the possession of his corporation is a personal wrong of such officer; and despite some statements contained in the opinions in *Alexander City Bank* v. *Equitable Trust Co.* (223 App. Div. 24), and *Nelvan Constr. Corp.* v. *Sanka Realty Corp.* (227 App. Div. 51), I think that *McCree* v. *McClenahan* (131 App. Div. 247); *Passaic Falls Throwing Co.* v. *Villeneuve-Pohl Corp.* (169 App. Div. 727); *Churchill* v. *St. George Development Co.* (174 App. Div. 1); *Milliken* v. *Frisbie, Coon & Co.* (175 App. Div. 579); and *Debobes* v. *Butterly* (210 App. Div. 50), all sustain the view that restitution of the $48,901.52 can be decreed against defendant Deitch as well as against Lodge Gate Forest, Inc. (See, also, *Sedgefield Holding Co.* v. *440 West End Ave. Corp.*, 228 App. Div. 138, 140, 141, *supra*.)

Even if I be wrong in that view, the result will be the same if I conclude that this is a case in which all the individual defendants can be held despite the fact that Lodge Gate Forest, Inc., was in form the seller.

The problem as to when and under what circumstances something which is in form a corporate transaction may be treated as the transaction of the individuals who control the corporation

and reap the benefits of its acts is one phase of the series or group of problems frequently referred to as " piercing the corporate veil " or " disregarding the corporate entity " which have been much discussed in recent years by philosophic and logical as well as intensely practical scholars. Throughout all the discussions there runs, of course, as the dominant theme, the eternal quest for justice, checked, to a lesser extent than usual it seems to me, by the countervailing considerations that courts exist for the purpose of administering, not the judge's personal idea of justice, but justice under law, and that a rule which leaves everything to " justice in the particular instance " really is not a rule, not law, at all.

It doubtless is impossible to formulate a rule which will fit all combinations of facts, but I believe that this much of a generalization is justified: Genuine corporate organization, even when adopted for the express purpose of avoiding personal liability, is not to be lightly disregarded, and mere failure upon occasion to follow all the forms prescribed by law for the conduct of corporate activities will not justify such disregard; but to achieve the immunity from personal liability which the law accords to the doing of business in corporate form there must be, not only initial corporate organization, but, also, actual conduct of the business in corporate form by the corporation (see *Natelson* v. *A. B. L. Holding Co.*, 260 N. Y. 233, 238; and *African Metals Corp.* v. *Bullowa*, 288 N. Y. 78, 85).

The holding in *Berkey* v. *Third Ave. Ry Co.* (244 N. Y. 84), that a parent corporation was not liable for a tort of a subsidiary was based very largely upon a detailed narration of the meticulous way in which proper corporate forms for the carrying on of separate businesses by separate corporations had been observed, and at page 90 the question in the case was stated as being whether upon those facts it could be said that the parent corporation had in truth operated the railroad of the subsidiary. The fact that it would have been illegal for the parent to operate the railroad of the subsidiary was, of course, a factor in the holding in that case; but if the mere fact of illegality had been of itself a sufficient basis for the holding, the court would not have so meticulously arrayed the facts as to the strict observance of corporate forms for the carrying on of separate businesses by separate corporations, and the proper inference, it thus seems to me, is that if such forms had been consistently ignored, the holding would have been the other way.

Defendant Sol Atlas had owned the land in question and had sold it to defendant Deitch, who caused title to be taken in the

name of Lodge Gate Forest, Inc.; and in October, 1952, the wife of Atlas was the owner of a part interest in a mortgage upon the property. That mortgage, apparently given for a part of the purchase price Deitch had agreed to pay to Atlas, was past due, at least in part, and Atlas was anxious for a sale as a means of obtaining payment of that mortgage. Defendant Ann Goodstein is a sister of defendant Deitch, and defendant Joseph Goodstein is her husband; and when plaintiff Proopis called upon Deitch for information about the property, all three were living in the same house. Defendant Deitch is and always has been the person in sole charge of the property, business, and affairs of defendant Lodge Gate Forest, Inc.; and he is and has been its sole stockholder except as upon occasion he may have permitted his sister and brother-in-law to appear as stockholders thereof. He has upon occasion had his sister and brother-in-law and defendant Atlas sign papers as officers of the corporation, but they so signed merely upon the direction of defendant Deitch without actual election as such officers, and the evidence as a whole leaves no doubt that Lodge Gate Forest, Inc., is a mere agency or instrumentality through which defendant Deitch carries on certain of his business enterprises; and his sister and brother-in-law and Atlas aid him in creating a form and pretense of corporate organization by carrying out his instructions that upon occasions when he desires it they sign papers as officers of the corporation or permit the issuance of statements that they are officers or stockholders.

Defendant Atlas signed, as vice-president of Lodge Gate Forest, Inc., the lease to Mrs. Hanrahan specifying a rental of $265 per month and also the separate letter of the same date stating that her rental would be only $200 per month up to February 28, 1953. And he not only failed to explain that act but actually testified that he never was an officer, director, or stockholder of Lodge Gate Forest, Inc.

In the first talk Proopis had with Deitch, Deitch, when asked why he was willing to sell a property which was yielding such a big return, referred to Atlas as his partner and said they had purchased a parking lot and needed cash. Deitch and Atlas shared an office together and Atlas was present in that office when Deitch gave the broker, Glassman, the details as to the property which he was asking Glassman to sell.

Deitch expressly admitted in his testimony that, without either election or resignation, his sister and brother-in-law were officers of the corporation when he directed them to sign papers as such and were not such officers when he did not so direct them.

Here, therefore, there was a complete disregard of corporate form, a complete disregard of corporate organization, and I think the conclusion must be that in effectuating this sale of this property the individual defendants were joint adventurers engaged in carrying on as individuals the common enterprise of effecting this sale (*African Metals Corp.* v. *Bullowa,* 288 N. Y. 78, 85, *supra; Natelson* v. *A. B. L. Holding Co.,* 260 N. Y. 233, 238, *supra*). As such, they all are jointly and severally liable for the return to plaintiffs of the entire $48,901.52 with interest.

In addition to the authorities just cited, see: *Sedgefield Holding Co.* v. *440 West End Ave. Corp.* (228 App. Div. 138, 140, 141, *supra*); *Quaid* v. *Ratkowsky* (183 App. Div. 428, affd. 224 N. Y. 624); *Ressler* v. *Samphimor Holding Corp.* (201 App. Div. 344); *Dobschiner* v. *Levy* (179 Misc. 416); *Farmers' Loan & Trust Co.* v. *Pierson* (130 Misc. 110); *Matter of Steinberg* (153 Misc. 339) and *Pagel, Horton & Co.* v. *Harmon Paper Co.* (236 App. Div. 47).

A final question remains as to whether the form of the complaint prevents me from giving effect to the conclusion I have reached.

In form, the complaint sets forth three causes of action. The first one is asserted against defendant Lodge Gate Forest, Inc., only; and it is in that one that plaintiffs set forth the making of the contract of purchase, the false representations, the payment of the consideration, the conveyance pursuant to the contract, the discovery of the false statements, and the offer to and demand for rescission, and the lack of an adequate remedy at law. It consequently is argued in behalf of defendants that as the cause of action for rescission is pleaded against Lodge Gate Forest, Inc., only, no relief on that cause of action can be awarded against any other defendant.

But in what is labeled as the second cause of action, which is pleaded against all defendants, the essential allegations of the first cause of action are repeated, with the additional allegation that the false representations were made by and in behalf of all four individual defendants.

In what is labeled as the third cause of action, likewise pleaded against all defendants, the essential allegations of both the first and second causes of action are again repeated, and it is there further alleged that all defendants confederated and conspired together to misrepresent the rentals to induce plaintiffs to purchase.

The second and third causes of action both also allege that plaintiffs were damaged in the sum of $250,000; and the prayer for relief is for rescission and damages.

In a bill of particulars served pursuant to a demand therefor, plaintiffs set forth, as among the items of damage claimed, the sums paid on the purchase as well as the $71,000 bond and mortgage.

There, of course, was inaccuracy in treating the consideration paid as an item of damage, for, as pointed out above, return of consideration upon the rescission of a contract of purchase is not an award of damage but merely a part of the process of rescission; but that merely serves to emphasize the fact that what we have here in substance is a pleading which asserts as against all defendants (corporate and individual) a claim for rescission. That, of course, means rescission with all the incidents which equity properly attaches to rescission; but, in addition to that, specific claim is then made for return of the consideration paid, even though under the erroneous label of damage.

I hence think that, although not drawn with perfect technical precision, there is nothing in the form of the complaint which prevents an award to plaintiffs of all the relief to which the facts and the principles of equity entitle them.

Defendants' counsel also draws attention to the fact that the complaint prays for rescission of the conveyance rather than rescission of the contract; but that, too, I think, is a hypertechnical criticism which is wholly without substance.

I accordingly conclude that plaintiffs are entitled to a judgment (1) rescinding the sale, (2) directing defendants and all those claiming under them by virtue of rights acquired after the filing of the notice of pendency of this action to surrender and deliver up to plaintiffs for cancellation the $71,000 bond and mortgage executed by P. S. & A. Realties, Inc., to Lodge Gate Forest, Inc., on November 7, 1952, (3) directing plaintiffs to execute and deliver to defendants, upon the tender to plaintiffs of said bond and mortgage, a deed reconveying the property to such defendant as defendants shall specify as the one to whom they desire to have the property reconveyed, and (4) adjudging that plaintiffs have and recover of all defendants jointly and severally $48,901.52, with interest thereon from November 7, 1952, and the costs of this action. I direct the entry of judgment accordingly.

The foregoing constitutes the decision required by the Civil Practice Act and judgment is to be entered thereon.