LARSON et al., Respondents v. WESTERN
UNDERWRITERS, INC. et al., Appellants
(87 N.W.2d 883)

(File No. 9669. Opinion filed February 13, 1958)

**Christopherson & Bailin**, Sioux Falls, for Appellants.

**T. R. Johnson**, Sioux Falls, for Respondents.

BOGUE, J. Defendants appeal from a judgment appointing a receiver and awarding damages to the plaintiffs.

Plaintiffs purchased a home in the city of Sioux Falls from the defendant, Western Underwriters, Inc., on September 30th, 1953. A contract for deed was entered into wherein the plaintiffs agreed to pay the defendant corporation the sum of $8,800. Plaintiffs paid $1,100 cash and agreed to pay the balance in monthly installments of $60. The defendant corporation agreed to pay the taxes and insurance and to add these amounts to the principal balance. A warranty deed was to be delivered to the plaintiffs when the consideration was fully paid. The monthly payments were made by plaintiffs to various people and at different places as defendant corporation did not have an office. These payments were eventually received by the defendant, John Jacobson, who is the principal stockholder, president and managing officer of the defendant corporation. The defendant corporation had no bank account, the finances being handled entirely by defendant Jacobson as an individual. The only assets of the defendant corporation were equities in three homes and its only business was the handling thereof. In March of 1956 the plaintiffs were informed that a mortgage against the premises which they

purchased was in default. No mention is made of this mortgage in the contract for deed. However, it was then in existence as the record shows that in May of 1953 a mortgage of $6,900 to be paid in monthly installments of $52 was recorded. After the receipt of notice of default the plaintiffs brought this action asking for the appointment of a receiver and for damages which they claim to have suffered by reason of defendant corporation's misrepresentation to the plaintiffs as to this property being connected with the city sewer. Defendants answered and defendant corporation counterclaimed asking for a foreclosure of the contract for deed.

The trial court found that defendant corporation was merely a form or name under which Jacobson was doing business as an individual; that it had misapplied the payments of plaintiffs and was in imminent danger of insolvency and concluded that a receiver should be appointed for the protection of the plaintiffs; that defendant corporation in the sale of the house to the plaintiffs had misrepresented it as to its being connected with the city sewer to plaintiffs' damage of $800. Judgment was entered in accordance therewith.

The defendants assign as error the court's refusal to adopt their proposed findings and conclusions that a valid and binding agreement to settle the litigation had been made, and that plaintiffs were in default in their payments on the contract, thus entitling the defendants to a decree of foreclosure. The defendants further assign as error the findings and conclusions made by the trial court.

█ In September of 1956 Jacobson came to the Larson home requesting a settlement of the action then pending. The plaintiffs were both deaf mutes which required the negotiating to be done in writing. Mrs. Larson was present but took no part in these negotiations. A statement was signed by Mr. Larson and Jacobson purporting to settle a part of their differences but provided no method for assuring that the payments would be made on the mortgage, which is the apparent reason for the commencement of this action. The statement concluded with the fol-

lowing: "We will see our attorneys Bailin and Johnson and get them to draw the necessary papers". Whether an informal agreement, which is to be thereafter reduced to writing, takes effect as a complete contract at once or when it is so reduced to writing depends on the intention of the parties as construed from the facts and circumstances. 17 C.J.S. Contracts § 49, p. 391.

The trial judge in his decision stated: "Mr. Larson who is deaf and unable to speak did not understand the nature and effect of what Mr. Jacobson was trying to do in having him sign the agreement". Considering the facts and circumstances we agree with the trial judge. It is apparent that the statement signed by Mr. Larson and Jacobson was incomplete, that not only details but a substantial part of their differences were to be settled by their attorneys. It was merely preliminary and did not constitute a valid and binding agreement between the parties. Restatement, Contracts, Vol. 1, § 26.

Plaintiffs did not make their monthly payment on the contract due May 1, 1956 until after the appointment of a receiver and did not pay a grading and graveling assessment filed March 19, 1956 in an amount of $90.17. All other monthly payments were promptly made. The defendant corporation claims that by reason of the acceleration clause in the contract it could and did declare all payments due and owing by reason of plaintiffs' failure to make these payments. In its counterclaim it asked for a judgment of foreclosure. Plaintiffs urge that under the facts and circumstances they were excused from making their May 1st payment until the appointment of a receiver. They further state that they believe that assessments were to be considered as taxes and thus the defendant corporation should have paid the same and added it to the balance due on the contract as provided therein.

By the great weight of authority the courts hold that a court of equity has the power to relieve a mortgagor from the effect of the acceleration clause when the default was the result of some inequitable conduct of the mortgagee. 36 Am.Jur., § 387, p.882; 70 A.L.R. 993. Also many courts have relieved the mortgagor against a default which is

unintentional, technical and without prejudice. 59 C.J.S. Mortgages § 500, p. 803; 70 A.L.R. 1000. In the present case it was clearly the conduct of the defendants which caused the default of the May 1st payment. After the defendant corporation had defaulted in its payments on the mortgage and notice thereof had been given to the plaintiffs it seems strange indeed for it to come into a court of equity and ask that plaintiffs be declared in default. The plaintiffs pursued the only course open to them in asking that a receiver be appointed before making any more payments on the contract. Had they done otherwise they might have paid for their home in full, then discovered a substantial mortgage existing thereon. Their only recourse would then have been against defendants with few if any assets.

██ ██ The failure to pay the assessment was apparently caused by the language of the contracts wherein it stated that taxes were to be paid by defendant corporation. Plaintiffs claim that the assessment is a form of taxes. Defendant corporation claims it is not. The word taxes has two accepted meanings, one inclusive and one exclusive of assessments. Where the word taxes is used in a contract the meaning must be determined from the context, Chicago Great Western Ry. Co. v. Kansas City Northwestern Ry. Co., 75 Kan. 167, 88 P. 1085. The trial court refused to find the plaintiffs in default, however, ordered them to pay this assessment and thus the defendant corporation in any event was not prejudiced.

We are of the opinion that the trial court correctly refused the proposed findings and conclusions of the defendants.

 Plaintiffs allege in their complaint that Western Underwriters, Inc., was and is a corporation duly created, organized and existing under the laws of this state. The court found that the corporation was merely a form or name under which the defendant Jacobson did business as an individual. Defendants urge that the allegation is a judicial admission contrary to the above finding of the court and thus the finding is error. The defendants make no claim in their briefs or argument that the evidence is insufficient to support the finding but

rely solely therein on the purported error mentioned above. We will limit our consideration, therefore, to the matter as briefed and argued. Schumacher v. R-B Freight Lines, Inc., 73 S.D. 535, 45 N.W.2d 458. The trial court in its findings does not deny the creation, organization and existence of the corporate structure of Western Underwriters, Inc. It specifically finds, however, that Jacobson was using this corporate structure as an instrumentality through which he was conducting his personal business. Where a corporation is the mere alter ego or business conduit of a person it may be disregarded. However, in so doing it is only for the purpose of adjudging the rights and liabilities of parties in the case. The corporate entity is regarded for all other purposes. Vol. 1, Fletcher's Cyclopedia Corporations, Perm. Ed. § 41, p. 136. We are unable to find error in the court's finding as urged by the defendants.

Defendant Jacobson claims immunity from personal liability on the ground that he acted solely as an officer and director of defendant corporation. The trial court disregarded the corporate entity and concluded that Jacobson was personally liable. The cases involving disregard of corporate entity and piercing of corporate veil are numerous and much has been written on this subject by text writers. See Fletcher's, Cyclopedia Corporation, Perm.Ed. § 41; Wormser, The Disregard of the Corporate Fiction and Allied Corporate Problems; Anderson, Limitations of Corporate Entity.

As the cases involving this subject are necessarily decided from the facts therein, there appears to be some confusion as to just when the corporate entity can be disregarded. Certain general rules, however, have been formulated. Anderson, Limitations of the Corporate Entity, § 247, p. 252 states:

> "It is now so well established that it has become almost aphoristic that, upon a proper showing that a corporation is but an instrumentality through which its owner or substantial owners for convenience transacts or transact his or their business, by the great weight of authority, both equity and

law will look through the form to its substance and will hold such corporation bound as the owner of the corporation might be bound or conversely hold the owner bound by acts which bind his corporation."

In P. S. & A. Realties, Inc., v. Lodge Gate Forest, Inc., 205 Misc. 245, 127 N.Y.S.2d 315, 324, the court states:

"It doubtless is impossible to formulate a rule which will fit all combinations of facts, but I believe that this much of a generalization is justified: Genuine corporate organization, even when adopted for the express purpose of avoiding personal liability, is not to be lightly disregarded, and mere failure upon occasion to follow all the forms prescribed by law for the conduct of corporate activities will not justify such disregard; but to achieve the immunity from personal liability which the law accords to the doing of business in corporate form there must be, not only initial corporate organization, but, also, actual conduct of the business in corporate form by the corporation. See Natelson v. A. B. L. Holding Co., Inc., 260 N.Y. 233, 238, 183 N.E. 373, 374; African Metals Corp. v. Bullowa, 288 N.Y. 78, 85, 41 N.E.2d 466, 470."

It is our opinion that the trial court having found that defendant corporation was a mere form or name under which Jacobson did business as an individual, correctly concluded as a matter of law that he was personally liable.

We have considered the other assignments of error briefed and argued by the defendants and find no reversible error.

Judgment affirmed.

All the Judges concur.