Edward Bingham et al., Appellants, *v.* Doyle K. Taylor, Respondent.

Fourth Department, October 24, 1974.

*Fred J. O'Donnell* for appellants.

*George F. Aney* for respondent.

Del Vecchio, J.   The only question now before us is whether the trial court erred in granting defendant's motion for dismissal at the close of the plaintiffs' proof in this action to recover money paid to defendant for a sale of stock.   We think that it did, and that plaintiffs are entitled to have resolved by a jury the factual issues whether there was ever a meeting of the minds of the parties such that a contract resulted and, if there was a contract, whether the parties intended a sale of restricted or unrestricted stock.

"Because the trial court dismissed the complaints, plaintiffs are entitled to have the proof read in the light most favorable to them and to have the benefit of the reasonable inferences to be drawn from the proof (*Carter* v. *Castle Elec. Contr. Co.*, 26 A D 2d 83; *African Metals Corp.* v. *Bullowa*, 288 N. Y.

78, 81). On a motion at the close of the plaintiffs' case, the test is not whether a plaintiff's verdict would have been set aside as contrary to the weight of the credible evidence, but whether the trial court could hold that there was no rational process by which the jury could have found for the plaintiffs (cf. *Blum* v. *Fresh Grown Preserve Corp.,* 292 N. Y. 241, 245; *Wessel* v. *Krop,* 30 A D 2d 764; *Prince* v. *City of New York,* 21 A D 2d 668)'' (*Calvaruso* v. *Our Lady of Peace R. C. Church,* 36 A D 2d 755).

There was proof on plaintiffs' behalf tending to show that one Volo, acting as authorized agent for plaintiffs, negotiated for the purchase of 1,000 shares of stock in Advanced Terminals Inc. from defendant and that the agreement was evidenced by a memorandum dated September 4, 1969 which stated: " I, Doyle Taylor promise to deliver 1000 (one thousand shares) of Advanced Terminals Inc. to Ned Bingham for the sum of $16,000 00/100. The certificates are in my name and will remain in my name until they can be legally transferred. All benefits or restrictions from this day forward with [*sic*] go to Ned Bingham. One thousand shares have been delivered to Ned Bingham for safekeeping and I have received a check for $16,000 00/100 from Robert Volo for Ned Bingham.''

The shares were ''restricted '' under Federal securities law because the defendant seller had originally purchased them in December, 1968 directly from the issuer, Advanced Terminals, Inc., in an assumed nonpublic offering without a registration statement having been made effective by the Securities and Exchange Commission.

In view of the language in the foregoing memorandum that the certificates would remain in the defendant's name until they could be legally transferred (there was evidence that they could not have been so transferred at the time of the agreement), and that 1,000 shares had been delivered to plaintiff Bingham " for safekeeping ", together with the statement that " all benefits or restrictions from this day forward " would go to Bingham, the instrument is ambiguous on the question whether the subject of the contemplated sale was restricted or unrestricted stock. Extrinsic evidence produced by plaintiffs would have permitted the jury to conclude that at least one party to the contract — the plaintiffs — intended that the purchase and sale should be of transferable, unrestricted stock, and that no such stock has ever been delivered to plaintiffs.

Plaintiff Bingham testified that the stock was to be taken initially in his name on behalf of all the plaintiffs, that at the time

the memorandum of the agreement was delivered to him, together with the 1,000-share stock certificate in defendant's name, he expected that some action would be taken to remove any obstacle to the legal transfer of the shares, that he never had any conversation either with Volo or with defendant about accepting stock with a restrictive indorsement, that he never consented to accept stock with restrictions, that for a period of more than one year after the date of the agreement he never had any intimation that defendant intended to deliver restricted stock. He also testified that, after he had made demands for the delivery of stock in his name, he received communications from defendant and from counsel for the corporation requesting his signature to an "investment letter" and his consent to a legend on the stock certificate which would have restricted the transfer of the shares represented by the certificate. The signature and consent were conditions precedent to the issuance of a stock certificate in his name, which would be restricted. An officer of the corporation testified that in 1970 the corporation had prepared a registration statement for filing with the Securities and Exchange Commission (approval of which would have provided for unrestricted transferability), but he did not know whether the 1970 statement was filed; that a statement was filed in 1972 but that no statement was ever approved by the commission. An examination before trial of defendant received in evidence contained testimony by him that he had not discussed with plaintiffs' agent Volo the registration of the stock, the type of certificate or a restrictive indorsement. Defendant further stated that an officer of the corporation had implied to him that the matter was "before the registration board" and it was "going to be done momentarily" so that the stock could be transferred without any restriction. The plaintiff Caliguire testified that several months after the memorandum had been executed defendant told him that the corporation would be going public very soon.

With such proof adduced by plaintiffs, it was error to take from the jury the question of the intention of the parties as reflected in the memorandum of September 4, 1969. "If there is ambiguity in the terminology used * * * and determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence, then such determination is to be made by the jury (Restatement 2d, Contracts, T. D. No. 5, § 238)" (*Hartford Acc. & Ind. Co.* v. *Wesolowski*, 33 N Y 2d 169, 172). Even though the stock was restricted at the

time the contract was made and both parties knew that to be so, it does not necessarily follow that the parties did not contemplate that the restriction was to be removed before the actual transfer of the stock was to take place. Indeed, the plaintiffs produced evidence that this was exactly what was to happen. If the jury believed that proof and concluded that plaintiffs so intended, but found that defendant's intention was otherwise, it would follow that no contract was made, for "a contract assumes an agreement, a meeting of the minds, on the thing to be done" (*Farago* v. *Burke,* 262 N. Y. 229, 232). Plaintiffs would then be entitled to the return of their money (*Eno* v. *Woodworth,* 4 N. Y. 249, 252–253).

Since a new trial is required, we do not reach the question whether the court properly ruled that the Federal laws were inapplicable with respect to the transfer of securities in this particular transaction.

The judgment should be reversed and a new trial granted.

MARSH, P. J., CARDAMONE, SIMONS and MAHONEY, JJ., concur.

Judgment unanimously reversed on the law and facts and a new trial granted, with costs to abide the event.