**NATIONAL BANK OF SOUTH DAKOTA, Plaintiff,**

v.

**Bill CLASON, d/b/a Bill Clason and Sons, Defendant and Appellant,**

and

**Bordner Associates, Inc., C. W. Bordner and Emma Bordner, husband and wife, Ronald Reynolds, Greg Bordner and Sherrie Bordner, husband and wife, Richard Stapleman and Nancy Stapleman, husband and wife, Harold Seymour, d/b/a Bordner Associates and Leemill G. Seymour, husband and wife, Defendants and Respondents,**

and

**Thomas Pass, d/b/a Contractors Rigging and Erection, Defendant.**

No. 12113.

Supreme Court of South Dakota.

June 8, 1978.

Donald R. Shultz of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for plaintiff.

Wynn A. Gunderson of Gunderson & Palmer, Rapid City, for defendant and appellant.

Terence R. Quinn, Belle Fourche, for defendants and respondents.

Thomas Pass, pro se.

ZASTROW, Justice.

In 1966, Thomas Pass, doing business as Contractors Rigging and Erection (Pass), had obtained salvage rights to abandoned Titan missile sites in Pennington and Meade Counties. In 1974, Pass subcontracted his salvage rights on three sites to Bordner Associates, a partnership consisting of C. W. Bordner, Ronald Reynolds, Greg Bordner, Richard Stapleman and Harold Seymour.* In 1974, the partners formed a South Dakota corporation which was called Bordner Associates, Inc. for the purpose of performing the salvage subcontract. Bill Clason, doing business as Bill Clason and Sons (Clason), was hired by Bordner Associates, Inc. to excavate water and fuel tanks on the missile sites.

The contract for excavation provided that Clason would be paid either (a) $28,000 per site, or (b) an hourly rate (not to exceed $32,000 per site) plus 50% of the net profit realized on the salvage of the tanks. The payment option was to be elected by Bord-

ner Associates, Inc. by December 20, 1974. Clason testified that Bordner Associates, Inc. elected option (a), but did not make the weekly payments required by the contract.

When Clason completed the Meade County site excavation, he still had not been paid by Bordner Associates, Inc. Thereafter, he refused to begin the excavation on the Pennington County site. On January 6, 1975, Clason received a partial payment of $15,455 from the National Bank of South Dakota (Bank) on behalf of Bordner Associates, Inc.

Border Associates, Inc. and Clason then negotiated and executed an addendum to the original contract. The addendum provided that if a sufficient number of the tanks were not sold to cover the investment of Bordner Associates, Inc. and the cost of excavation by Clason as determined by option (b) of the original agreement by April 1, 1975, the remaining tanks would be divided equally between the two parties.

Pursuant to this addendum, Clason proceeded to excavate the tanks on the Pennington County site. On March 18, 1975, Clason received $7,500 from the Bank on behalf of Bordner Associates, Inc. No further payments were made to Clason, and Bordner Associates, Inc. apparently abandoned the salvage project, leaving ten excavated tanks at the sites.

The original lawsuit was brought by the Bank to recover loans made to Bordner Associates, Inc. and Clason, and to determine the conflicting interests of the Bank and Clason in the ten tanks. The Bank's suit has been settled and its appeal has been dismissed. Clason had filed a cross claim against Bordner Associates, Inc. and the shareholders individually. Clason has cross appealed from the trial court's decision on his cross claim.

This cross appeal raises two issues: (1) Did the trial court err in failing to pierce the corporate veil of Bordner Associates, Inc. and hold the shareholders individually

* The wives, Emma Bordner, Sherrie Bordner, Nancy Stapleman, and Leemill G. Seymour, were not part of Bordner Associates but had executed loan documents to the National Bank of South Dakota, and, as such, were made parties to the original action.

liable; and (2) Did the trial court err in finding that Clason had elected option (a) of the agreement?

"Findings of fact shall not be set aside unless clearly erroneous," SDCL 15–6–52(a), and will not be set aside unless the appellate court upon the entire record "is left with a definite and firm conviction that a mistake has been committed." *In re Estate of Hobelsberger*, 1970, 85 S.D. 282, 181 N.W.2d 455. Although there is evidence upon which the trial court might have found that Bordner Associates, Inc. was " 'but an instrumentality through which its owner or substantial owners for convenience transacts or transact his or their business,' " *Larson v. Western Underwriters*, 1958, 77 S.D. 157, 87 N.W.2d 883, we are not left with a firm and definite conviction that the trial court's finding of fact was erroneous, inasmuch as a " '[g]enuine corporate organization, even when adopted for the express purpose of avoiding personal liability, is not to be lightly disregarded * * *.' " *Larson v. Western Underwriters*, 77 S.D. at 164, 87 N.W.2d at 887.

The same must be said of the trial court's finding that Clason had elected to be paid under option (a). Clason admitted that Bordner Associates, Inc. had elected to proceed under option (a), but had not made the weekly payments as required. The trial court apparently interpreted Clason's failure to seek possession of the tanks as evidence that he intended to be paid the flat rate under option (a) rather than secure a share of the profits from a widely fluctuating salvage market under option (b). Although the evidence is unclear and subject to differing interpretations, we do not find the trial court's finding clearly erroneous.

The judgment is affirmed.

All the Justices concur.