(December 27, 1976)

■ PATRICIA M. BATTON, Appellant, v AGADGAN ELGHANAYAN et al., Doing Business as BAILEY GARDENS Co., Respondents.—In a negligence action to recover damages for personal injuries, plaintiff appeals from (1) a judgment of the Supreme Court, Westchester County, entered July 22, 1975, which is in favor of defendants, upon the trial court's dismissal of the complaint at the close of plaintiff's case, at a jury trial, and (2) an order of

the same court, entered April 29, 1976, which denied plaintiff's motion for supervised disclosure of nonparty witnesses. Judgment and order affirmed, without costs or disbursements. The proof adduced was insufficient to establish constructive notice. The order was properly made. Latham, Acting P. J., Damiani and Hawkins, JJ., concur; O'Connor, J., dissents and votes to reverse the judgment and grant a new trial and, in view thereof, to dismiss the appeal from the order as academic, with the following memorandum: This is an appeal from (1) a judgment of the Supreme Court, Westchester County, entered July 22, 1975, dismissing the complaint at the end of plaintiff's case for failure to establish a prima facie case of negligence, and (2) an order of the same court, entered April 29, 1976, denying plaintiff's motion for supervised disclosure pursuant to CPLR 3104. The primary question raised on appeal is whether photographs introduced by the plaintiff raised a factual issue for the jury's consideration as to whether the defendants possessed constructive knowledge of a defective condition that existed in a doorway of a building they owned. For the reasons set out below, I believe it was error to conclude that the issue of constructive notice was not raised by plaintiff's evidence as a matter of law. I therefore dissent.

### FACTS

On May 29, 1965 plaintiff was a tenant at Bailey Gardens, an apartment building owned by the defendants. The building contained a cellar garage. Plaintiff testified that at approximately 9:15 P.M. she left her apartment with the intention of attending a movie. When the elevator failed to appear despite her having pressed the elevator button several times, she decided to walk down to her car, garaged in the cellar, by way of the fire stairs. As she approached the bottom of the staircase the light grew dimmer. When she stepped through the doorway leading into the garage, her left foot "went down in a hole" and she fell forward, injuring herself. At that point five photographs were introduced into evidence. Plaintiff testified that they were taken the day after the accident and that they accurately portrayed the condition of the doorway floor as it existed on the night of the accident. The photographs depict the doorway from five different angles and indicate quite clearly that two substantial pieces of concrete were missing from the doorway floor. Plaintiff stated that the hole was at least one inch deep and approximately four inches wide. Those dimensions are rather explicitly demonstrated by plaintiff's Exhibit 3, a photograph depicting a person holding a yardstick in the depression. The doorway floor has a second substantial hole, of slightly smaller proportions, and piles of dirt are accumulated in both corners of the doorway, with small particles of broken concrete and plaster clearly visible in the photographs. A portion of an examination before trial of Nathan Williams, a handyman at the building at the time in question, was read into evidence. Williams testified that Pete Amato, a general contractor, had the job of repairing broken concrete in the building and that Amato was in the building "about every day." At the close of plaintiff's case the trial court granted defendants' motion to dismiss pursuant to CPLR 4401 upon the ground that plaintiff had failed to raise any factual issue for submission to the jury. The trial court rejected plaintiff's argument that the photographs raised a factual issue as to constructive notice, and dismissed the complaint. The court reasoned that a jury would be speculating to conclude that the defective condition existed for a long enough period of time to hold the defendants negligent for not repairing it. After the dismissal, plaintiff initiated a motion for supervised disclosure as to certain witnesses and sought an order for the examination

of Mr. Lages. Lages was the building superintendent at the time of the accident; plaintiff alleged that Lages had previously stated that he had known about the holes for six weeks prior to the accident. She further alleged that she had just recently discovered his whereabouts. By order dated April 23, 1976 the request was denied, but in denying the motion Trial Term stated that if, on appeal, it were determined that the complaint had been improperly dismissed, then plaintiff's motion "would seemingly be in order."

### THE STANDARD OF REVIEW

At the outset it is important to note the context within which these appeals are presented. Plaintiff's complaint should not have been dismissed unless there was no rational process by which the jury could have found for her (see *Blum v Fresh Grown Preserve Corp.,* 292 NY 241, 245). Where a judgment is directed in favor of a defendant as a matter of law, an appellate court must examine the evidence in the light most favorable to the plaintiff (*African Metals Corp. v Bullowa,* 288 NY 78, 81; *Carter v Castle Elec. Contr. Co.,* 26 AD2d 83).

### USE OF PHOTOGRAPHS

"A photograph is admissible in evidence, not merely as a map or diagram representing things to which a witness testifies from his independent observation, but as direct evidence of things which have not been directly described by a witness as having come from his observation" (21 NY Jur, Evidence, § 363, pp 492–493). "Properly authenticated photographs are admissible in evidence whenever it is relevant to describe the physical characteristics of a person, place, or thing" (Richardson, Evidence [Prince, 10th ed], § 137, p 109).

### PRIOR ADJUDICATIONS

This is not a case of first impression on the role of photographs in establishing constructive notice of a tortious condition. Earlier cases make it clear that photographs which clearly demonstrate a dangerous condition of substantial duration can serve to establish constructive notice. The photographs in this case are of such a nature. In *Marcus v Manhattan Beach Parks Corp* (246 App Div 331) the First Department reversed a judgment which had dismissed the complaint at the end of plaintiff's case. The plaintiff had alleged that she had been injured while descending a stairway because of the defective condition of one of the steps. The court stated (p 332): "From the plaintiff's proof and the photographs in evidence, the jury could have found that the defect which caused the plaintiff's fall was the result of gradual wear or deterioration and that consequently the defendant was chargeable with constructive notice of the condition." The "plaintiff's proof" referred to consisted of the plaintiff's testimony that the defective step appeared to be "very badly worn," "dilapidated" and "weather-beaten." At this point it might be well to note that a jury can observe from a proper photograph that a place is "badly worn" or "dilapidated" or "weather-beaten." In *Valle v City of New York* (22 Misc 2d 985) Mr. Justice Shapiro, then sitting at Trial Term in Queens County, directed a verdict for the defendants at the conclusion of the testimony in a negligence action. The plaintiff was injured when she stepped into a hole in a public sidewalk. Seeking to establish constructive notice, the plaintiff introduced photographs of the hole and argued that the jury could conclude therefrom that the hole had been caused by a gradual process of deterioration. Mr. Justice

Shapiro put the issue this way (p 986): "whether the photograph in and of itself can be sufficient as a matter of law to establish constructive notice." He concluded that, under the facts of the case, the jury could not find that constructive notice existed, stating (pp 986–987): "The city is under no duty to repair every minor defect in the public sidewalks but only to maintain them in a reasonably safe condition. Assuming a minor defect in the sidewalk after being subjected to marked thermal stresses gradually becomes more serious, a jury in the absence of competent proof, could do no more than speculate as to when the condition first became an unreasonable hazard. The record here shows that for several days prior to the accident the temperature was considerably below freezing and that on the day prior to the accident the temperature had gone down as low as zero. Under such circumstances the crack-up of the cement in the sidewalk may well have been caused by the temperature. In any event, upon the record in this case one could only guess as to when or how the break in the sidewalk occurred. A *guess* is not a substitute for *proof*" (emphasis in original). Mr. Justice Shapiro, with proper caution, was quick to point out, however, that (p 987): "one can readily conceive of situations where to deny the jury the right to draw an inference from a photograph that a sufficient length of time had elapsed to warrant charging a defendant with constructive notice, would be contrary to all logic." It is of interest to note that in *McDermot v City of New York* (287 F2d 49) the Second Circuit commented on the issue at hand by stating (p 50): "True, in certain circumstances, a photograph may be thus revealing." *Valle* was cited in support of this statement. *Mooney v Turner* (35 AD2d 674) is of particular interest because it notes the aspects of a photograph which are of significance in establishing constructive notice. In *Mooney* a jury verdict for the plaintiff was reversed in the interests of justice and a new trial was ordered. The plaintiff had been injured when her heel caught in a crack, and a photograph of the crack was introduced to establish constructive notice. The court noted: "the photographs themselves were not identified as to when they were taken or as to the angle of elevation from which they were taken or as to the distance of the camera from the crack so as to render them less inconclusive than they were. Nor did the photographs clearly and conclusively reflect the physical condition of the crack as of the time of the accident." It would be well to here note that the present situation involves photographs of a substantial hole, not a "crack". The photographs in the instant case were identified as having been taken the day after the accident. The vague time element of *Mooney* is absent. Finally, the photographs here clearly reflect the physical condition of the subject area involved and thus, angles of elevation and camera distances do not present serious concerns as to whether the photographs represent distorted reproductions of the doorway. In *McCoy v City of New York* (38 AD2d 961) this court reversed a judgment which dismissed the complaint at the end of plaintiff's case in a negligence action. Plaintiff was injured when she fell because of a hole in a public sidewalk. The court noted that: "She introduced 11 photographs into evidence, dated within a month after the accident, which depict the accident scene from several angles and show nearby features which would enable the jury to deduce the size of the defect and the angles, distances and heights from which the pictures had been taken". There was also evidence that heavy kegs had been tossed from delivery trucks to the sidewalk for a period of time. The photographs, in combination with that evidence, were sufficient to create an issue of constructive notice which required jury resolution.

## DISCUSSION

The present factual pattern does not provide evidence, aside from the photographs, to establish constructive notice. The testimony concerning the general contractor, Mr. Amato, is not probative of the length of time the doorway defect existed. Unlike *McCoy,* there is no evidence of events taking place over a period of time which would have created the holes. There was no testimony, as there was in *Marcus,* that the doorway was "very badly worn." I do not, however, find this case to be similar to either the *Mooney* or *Valle* cases. Unlike *Mooney,* there was testimony that the photographs here were taken the day after the accident. Distances and angles in this case are not vague, and it would not be fair to say, when viewing the photographs, as indeed we must, in the light most favorable to plaintiff, that the true physical condition of the doorway is not reflected by the photographs. The accident in this case occurred on May 29. It is therefore not a case, as *Valle* was, where it would appear that sudden temperature changes caused the concrete to buckle. The issue is therefore squarely presented as to whether the photographs alone are sufficient to establish constructive notice. The photographs in this case, when viewed in the proper light—that light most favorable to plaintiff—were sufficient to create a factual issue requiring jury resolution as to whether the defects existed for a sufficient period of time to charge the defendants with constructive notice. I am not unaware of or insensitive to the dangers created when photographs are relied upon to establish the condition of a place. Manipulation of camera angles, lenses and distances can serve to badly distort the true perspective and to change the actual physical outline of the matter under focus, and all proper precautions must be taken to prevent such chicanery, yet, by the same token, there is no logical basis for ignoring the evidential value of photographs which do in fact reflect the reality of a condition. As already discussed, the photographs here appear to be fair representations of the doorway in question on the day after the accident. The defendants always retain the right to stoutly maintain that the photographs are in reality distortions of the area depicted, but rational reasons must be forwarded in support of such contentions. It is error here to say that by no rational basis could a jury find that the defects existed for a sufficient period of time to charge the defendants with constructive notice. Two substantial pieces of concrete are missing from the doorway. It is difficult to guess the event which would have made these chunks of concrete suddenly disappear. The presence of very small concrete chips shows that such holes are often created by gradual deterioration. The fact that the chips in the photographs would clearly be insufficient to fill in the two holes again leads to the logical conclusion that the erosion of the concrete doorway was gradual. The doorway contains piles of dirt in its corners, and the walls nearby are filthy. This, again, is consistent with what might turn out to be a jury determination of neglect over a sufficient period of time to establish constructive notice. The evidence of neglect of the doorway area by the defendants, as supplied by the photographs, is the equivalent of the testimony in *Marcus* that the stair was "dilapidated" and "very badly worn." Finally, it is quite clear that rapid weather change, a major cause of concrete buckling, as in *Valle,* does not usually occur in an indoor garage in late May. In view of the foregoing, it is difficult indeed to maintain, as a matter of law, that no rational jury could make a finding of constructive notice. In view of this resolution of the constructive notice issue, the appeal from the denial of the request for supervised disclosure becomes moot. In *Murphy v Board of Educ.* (20 AD2d 53) the plaintiff's complaint, which had been dismissed at the close

of her presentation of evidence, was reinstated and a new trial was ordered. A key issue in the case was whether the defendant had notice of a defective lighting condition. In reversing the dismissal of the complaint the Fourth Department stated (p 54): "The only proof of constructive notice is that the light was defective for lack of a bulb. It might have been found from the established facts that the light fixture was above the reach of persons standing on the ground, that there was no light bulb in it at the time of the accident, and that photographs taken the following day show that there was no bulb in it then. While concededly the proof of constructive notice in this case was very slight, we believe that in the interests of justice, the plaintiff should have an opportunity to present such additional proof as she may have upon this subject." It would appear that the interests of justice might be better served if plaintiff had been granted an opportunity to prove, via an examination of Mr. Lages, that the building superintendent had been aware of the holes for six weeks prior to the accident. This observation does not in any way diminish my opinion that plaintiff is entitled to a new trial because of the adequacy of the photographs to raise a factual issue for a jury. The use of photographs as evidence creates a danger of manipulation that can serve to distort the accuracy of the fact-finding process. The photographs, however, can also greatly aid that same fact-finding process. That is why a close examination of the facts and photographs in each case is so crucial. Upon these facts, the court has failed to take advantage of the benefits available through the use of photographic evidence.