GRONSETH, Respondent, v. BRUBAKKEN, et al, Appellants.

(236 N. W. 372.)

(File No. 6925. Opinion filed May 4, 1931.)

See also 228 N. W. 189.

*Otto L. Kaas,* of Britton, for Appellants.

*M. J. Staven,* of Britton, and *C. A. Wells,* of Webster, for Respondent.

MISER, C.   Appellants John O. and Guri Brubakken, his wife, executed and delivered to Torger G. Gronseth their promissory note on January 31, 1916, for $6,000 due January 31, 1926, with ten interest coupon notes.   The indebtedness was secured by a real estate mortgage.   The defense interposed to the foreclosure of the mortgage is that the mortgage was materially altered making it void.   Section 910, R. C. 1919.

Written on the lower margin of the principal note is the following: "This note is secured by mortgage on W$\frac{1}{2}$ SE$\frac{1}{4}$ and E$\frac{1}{2}$ SW$\frac{1}{4}$ of section 17 and NW$\frac{1}{4}$ section 20, all in 128—54, and lots 1, 2, 3 and 4 of section 32—128—54 of even date herewith." The notes and the marginal writing were in the handwriting of F. J. Brown.   He testified that the writing on the margin was there at the time the notes were signed.   The mortgage was in the handwriting of Brown's partner, Printup.   Before the trial Printup had died.   For ease in reference to the several parts of the description of the lands in the mortgage, we have indicated them as parts A, B, C, D, and E, as follows:

(Part A) "The West one-half of the Southeast Quarter and the East one-half of the Southwest Quarter of section seventeen (17) in Township One Hundred and Twenty-eight (128) N., Range Fifty-four (54) West."

(Part B) "And the Northwest one-quarter of Section Twenty (20) in Township One Hundred and Twenty-eight (128) N., Range 54 W."

(Part C) "And Lots One, Two, Three and Four (1, 2, 3, 4) of Section Thirty-two in Township One Hundred and Twenty-eight (128) N., Range Fifty-five (55) W."

(Part D) "As security for the payment to said mortgagee at Britton, S. D., of the principal sum of six Thousand (6,000) Dollars and interest thereon * * * according to one certain promissory note bearing even date herewith, * * * with 10 interest coupons attached, * * * that the same are free from all incumbrances:"

(Part E) "Subject, however, to a mortgage for $2,000.00 on the NW¼ Sec. 20, Twp. 128, Range 54 hereinbefore mentioned. * * *"

Parts B and E had ink lines drawn through them to indicate their cancellation. The land described as part A was known as the Narum quarter; the land described in part B, as the homestead; and the land described in part C as the tree claim. Appellants claim that as originally executed this mortgage contained the description of the Narum quarter only. Respondent claims that the mortgage as recorded and presented at the trial was in the same condition as when signed.

At the trial the mortgagee explained the lining out of parts B and E thus: He (Torger G. Gronseth) had already a mortgage of $2,000 on Brubakken's homestead and tree claim when he sold the Narum quarter to Brubakken for $6,000. After some discussion it was agreed between the parties that the $2,000 theretofore secured by a mortgage on the homestead and tree claim should be secured by a mortgage on the homestead only, part B, and that the $6,000, representing the purchase price of the Narum quarter, should be secured by the Narum quarter and the tree claim. This understanding was arrived at after the mortgage had been partly drafted. After the proper papers had been prepared to secure the $2,000 indebtedness with a mortgage on the homestead only, Printup lined out of the $6,000 mortgage the description of the homestead, and also part E, the $2,000 incumbrance clause. Before the trial the mortgage of $2,000 on the homestead had been paid.

It is uncontradicted that from the time John signed the mortgage and took it to the farm for Guri's signature, until after the

recording of the mortgage as presented at the trial, Gronseth did not see it. John sent the papers back to Printup after Guri signed them. Printup had the mortgage recorded. At the time of the trial Guri Brubakken was dead. According to the evidence of John and his son Eric, also appellant herein, and according to the testimony of Guri given at a former trial, the only land described in the mortgage when signed by John and Guri was the Narum quarter then being purchased from Gronseth. Gronseth does not know whether the parts were lined out before or after John Brubakken signed the mortgage. He testified positively, however, that Printup "scratched them out right there when John was there" and that "the other lots were in there at that time." Brown's testimony is positive and uncontradicted that the three tracts were described in the note at the time of its signing and that Printup drew up the mortgage and John Brubakken signed it in his presence. He testified: "I consider that Exhibit 9 (the mortgage) is in the same condition as it was when Mr. Brubakken signed it." The description of all the land in the note, the cancellation of the $2,000 mortgage on the tree claim, and the renewal of the $2,000 mortgage on the homestead alone all tend to corroborate the testimony of respondent's witnesses.

On the other hand, if appellants testified truly, they mortgaged only the Narum quarter to secure its entire purchase price to be paid ten years later with annual interest of 5½ per cent, and the effect of all the papers prepared on January 31, 1916, was to free from the lien to Gronseth the Brubakken tree claim. Guri, whose testimony at a former trial was introduced, signed the $6,000 mortgage with a mark. Eric testified that he read and translated the $6,000 mortgage to Guri, who asked whether the tree claim was in it and was told that it was not. John says he heard Eric read the mortgage to Guri, his mother. After testifying positively on direct examination that at the time he signed the mortgage in the office of Brown and Printup it contained only the Narum quarter, John testified on cross-examination concerning that occasion, as follows:

"Q. Did you read the mortgage or somebody else read it to you? A. Nobody read the mortgage there.

"Q. Nobody read the mortgage there? A. No.

"Q. You did not read it over? A. I did not read it over before I came to my woman.

"Q. And then at the time you signed the mortgage at Print-up's office, did you not read the mortgage yourself? A. According to that it was all blank there.

"Q. Answer that question yes or no. A. No.

"Q. You did not read it? A. No.

"Q. You did not know what was in that mortgage until you got out home and Eric read it to your wife? A. Yes.

"Q. The first you knew what was in the mortgage? A. Yes, about the agreement to be in the mortgage.

"Q. You knew what the agreement was? A. Yes, sir.

"Q. You heard what Eric read out there? A. Yes, sir."

On conflicting evidence the learned trial judge found that there was no material alteration of the mortgage after its execution; that the changes made in the mortgage were made before its execution to conform to the agreement of the parties; that the respondent Gronseth had paid taxes and insurance on the premises in the sum of $658.94; and that the total amount due to respondent as principal and interest, taxes and insurance, was $11,110.87. The foregoing findings are abundantly supported by the evidence. The quetsion of material alteration is decided by the findings. Whitney Loan & Trust Co. v. Brown, 42 S. D. 95, 172 N. W. 875.

Appellants also object to the allowance to respondent of $500 as his attorney's fees. The history of this litigation has been partially set out in Gronseth v. Brubakken (S. D.) 228 N. W. 189, being case No. 6793. The present appeal is from the judgment of foreclosure in what was, in case No. 6793, referred to as action No. 3. It appears that in January, 1916, Gronseth sold the Narum quarter to John O. Brubakken for $6,000, taking back a mortgage for the full purchase price. John O. Brubakken never paid either interest nor taxes nor any part of the principal. His son Eric made three interest payments only of the ten due and paid no taxes whatever after 1921. On December 9, 1925, respondent herein, Thomas Gronseth, assignee of the mortgage, commenced foreclosure by advertisement. On January 9, 1926, appellant John Brubakken obtained an order restraining foreclosure by advertisement. Respondent then brought action in foreclosure against John O. and Guri Brubakken, the mortgagors, and after trial had on July 7, 1926, judgment for $9,663.57 was entered in favor of respondent. The premises were advertised for sale

pursuant to law and on August 21, 1926, bid in by respondent. Thereafter the sale was confirmed by the court and sheriff's deed issued. When respondent demanded possession, Eric Brubakken refused to surrender possession. Respondent then began an action in justice court in forcible detainer. Eric set up title in himself. The case was certified to circuit court. In the answer of Eric Brubakken, he claimed to be the owner in fee simple of the premises. Two days after the date of this answer, that is, on October 12, 1927, a quitclaim deed from John Brubakken to Eric Brubakken was recorded. After trial of the forcible detainer action, it was adjudged that at the time the first foreclosure action was commenced and at the time of the execution sale Eric Brubakken was residing on the premises under an unrecorded deed, and that Thomas Gronseth had no right to the possession of the premises as against Eric Brubakken. Thereafter respondent brought the present suit to open up the first foreclosure suit and to foreclose against John O. Brubakken, Guri Brubakken, his wife, Eric Brubakken, and Kari Brubakken, his wife. The appointment of a receiver therein was the cause of appeal No. 6793. In the first judgment of foreclosure against John O. Brubakken and wife, the attorney's fee was allowed at $500. The present allowance is not in addition thereto. The attorney's fees should certainly be no less after all this additional litigation in which additional parties have been brought in. The fee is not excessive.

The judgment and order appealed from should be, and they are, affirmed.

POLLEY, P. J., and CAMPBELL, ROBERTS, WARREN, and RUDOLPH, JJ., concur.