FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF RAPID CITY, SOUTH DAKOTA, a Corporation, Plaintiff and Appellee,

v.

James H. KELLY and Beverly E. Kelly, Elick E. Hawk and Donna I. Hawk, Defendants and Appellants.

No. 13342.

Supreme Court of South Dakota.

Argued Sept. 28, 1981.

Decided Nov. 18, 1981.

costs in the amount of $3,599.05. The focus on appeal is the validity and enforceability of what is commonly referred to as a 'due on sale' clause which is frequently found in real estate mortgages. We affirm.

## FACTS

In October of 1977, Kelly executed to First Federal a promissory note for $55,-000.00. James Kelly is president of a bank located in Pierre. As security for payment on this note, Kelly also executed to First Federal a mortgage on a parcel of real property located in Pierre. Paragraph seven of this mortgage provides (emphasis supplied):

> If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three (3) years or less not containing an option to purchase, Lender may at Lender's option, and upon sixty (60) days notice to Borrower, declare all the sums secured by this Mortgage to be immediately due and payable, and this Mortgage may be foreclosed as provided by statute. Lender shall have waived such option to accelerate if, prior to the sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Lender and that the interest payable on the sums secured by this Mortgage shall be at such rate as Lender shall request. If Lender has waived the option to accelerate provided in this paragraph 7, and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Mortgage and the Note. No prepayment penalty shall be imposed on the Borrower as the result of the acceleration of maturity of

Donald R. Shultz of Lynn, Jackson, Shultz & Lebrun, P.C., Rapid City, for plaintiff and appellee.

John S. Lovald of Duncan, Olinger, Srstka, Lovald & Robbennolt, P.C., Pierre, for defendants and appellants.

HENDERSON, Justice.

## ACTION

Appellants James Kelly, Beverly Kelly (Kelly), Elick Hawk, and Donna Hawk (Hawk) appeal from a judgment by the trial court which foreclosed a mortgage on certain real property located in Pierre, South Dakota, and awarded appellee First Federal Savings & Loan Association of Rapid City (First Federal) $53,216.36; said amount to be taken from the proceeds of the sale of the mortgaged property. First Federal was also awarded attorney fees and

all sums due hereunder and the payment thereof by Borrower as a result of this paragraph.

The note and mortgage provided for an annual interest rate of nine percent. During negotiations between Kelly and First Federal's secondary marketing manager, however, First Federal reduced the interest rate to eight and three-quarters percent as a matter of professional courtesy. Kelly was accordingly charged at the eight and three-quarters rate even though the interest rate in the note and mortgage remained at nine percent. It was understood between the parties that Kelly would only be allowed the one-quarter percent interest reduction as long as he did not sell the property to another buyer. If such a sale did occur, the new buyer would be required to pay nine percent interest.

On August 2, 1979, Kelly sold the mortgaged property to Hawk on a contract for deed. Elick Hawk is also president of a Pierre bank. The contract for deed provided that Hawk pay Kelly nine percent interest on the balance due. Prior to the execution of this contract, Kelly had paid off a $10,000.00 second mortgage First Federal held on the property.

First Federal notified Kelly in March 1980 that, based upon the sale of the mortgaged property without its prior written consent, it was enforcing its rights under paragraph seven of the mortgage; that is, Kelly had sixty days to pay the entire balance of the mortgage or subject the property to foreclosure. Kelly and Hawk disputed the enforceability of the due on sale clause contained in paragraph seven of the mortgage agreement and, consequently, this action was commenced.

## ISSUES

### I.

Under the terms of this mortgage, can a mortgagee enforce a due on sale clause agreement absent a showing of security impairment? We hold in the affirmative.

### II.

Under the facts of the present case, do the doctrines of equitable estoppel or laches preclude First Federal from enforcing the due on sale clause of the mortgage? We hold that they do not.

### III.

Under the facts of the present case, does the real property transfer by contract for deed between Kelly and Hawk constitute a sale or transfer of the property within the meaning of the mortgage? We hold that it does.

### IV.

Did the trial court err by awarding First Federal $3,599.05 in attorney fees and costs? We hold that it did not.

## DECISION

### I.

■ The legal effects and consequences of a due on sale clause is an issue of first impression for this Court.[1] A due on sale clause is a provision usually found in a note or mortgage whereby the entire debt becomes immediately due and payable, at the lender's option, upon the sale of the mortgaged property. *Von Ehrenkrook v. Midland Federal Savings & Loan Ass'n*, 585 P.2d 589 (Colo.1978). Such clauses are generally used to prevent subsequent purchasers from assuming existing loans. By this

---

1. We are cognizant of First Federal's assertion that the Federal Government, through certain congressional and administrative enactments, has preempted state regulation of due on sale clauses in the loan instruments of federal associations pursuant to the Supremacy Clause, art. VI, cl. 2 of the United States Constitution. In light of our ultimate holding and applicable state law, however, we elect to take the route pioneered by the court in *Williams v. First Federal Savings & Loan Association of Arlington*, 651 F.2d 910 (4th Cir. 1981) and forego any discussion of this contention. By so doing we do not in any way imply that such a federal preemption does not exist. Rather, since our ultimate disposition would, we believe, be identical under either federal regulation or South Dakota law, we find it unnecessary to venture down the alternate path of preemption.

manner, the lender can require a new purchaser to refinance property at current rates of interest. In times of accelerating interest rates, the advantage of this clause to the lender is obvious.

Here, appellants contend that the due on sale clause should not be enforced unless First Federal can first show an impairment or jeopardization of security resulting from Hawk assuming Kelly's obligation under the mortgage agreement. Ten states have, in various degrees, held in accord with this contention.[2] By way of analysis, most of these courts reasoned that the due on sale clause was an unlawful restraint on alienation if, in fact, no security impairment could be shown by the lender. Since historically the law has abhorred any unreasonable or inequitable restraints on the alienation of property, and the purpose of a due on sale clause is to protect the lender's security, these courts have generally concluded that absent any such impairment, the lender cannot prevent the borrower from transferring the property involved to a third party. Inherent in this rationale is the premise that due on sale clauses are, at least, an indirect restraint on alienation and thus violative of public policy.[3]

This Court, however, is effectively precluded from addressing the inquiry of whether a due on sale clause constitutes a restraint on alienation due to the explicit language of SDCL 21–49–13(7), which provides:

In particular, but without limitation, any mortgage subject to the provisions of this chapter, may contain provisions relating to:

. . . .

(7) If the mortgaged premises are sold without the prior consent of the mortgagee, that the entire balance owing may at the option of the mortgagee be declared immediately due and payable upon sixty days notice to the mortgagor, and the mortgage foreclosed as provided in this chapter.

Moreover, SDCL ch. 43–5, which deals with restraints on alienation of property, contains no reference to due on sale clauses.

It is clear by these statutes that our State Legislature has specifically considered the policy considerations involved in a due on sale clause and has allowed for the inclusion of such in a mortgage agreement. Under the existing law of this state, then, no impairment of security by the lender is necessary for it to require the borrower to accelerate payment under an enforceable due on sale clause.

In light of SDCL 21–49–13(7) and the express terms of the mortgage, further discussion of this issue would be superfluous. We are upholding the express terms of the mortgage. We hold that, under this particular mortgage, no impairment of security is required prior to a lender enforcing its rights under a due on sale clause.

## II.

■ Appellants secondly maintain that First Federal should be prevented from enforcing the due on sale clause because of the existence of certain equitable defenses.

**2.** *See Tucker v. Pulaski Federal Savings & Loan Ass'n,* 252 Ark. 849, 481 S.W.2d 725 (1971); *Patton v. First Federal Savings & Loan Association of Phoenix,* 118 Ariz. 473, 578 P.2d 152 (1978); *Tucker v. Lassen Savings & Loan Association,* 12 Cal.3d 629, 116 Cal.Rptr. 633, 526 P.2d 1169 (1974); *First Federal Savings & Loan Association of Englewood v. Lockwood,* 385 So.2d 156 (Fla.App.1980); *Nichols v. Ann Arbor Federal Savings & Loan Association,* 73 Mich.App. 163, 250 N.W.2d 804 (1977); *Sanders v. Hicks,* 317 So.2d 61 (Miss.1975); *Fidelity Land Development Corp. v. Rieder,* 151 N.J.Super. 502, 377 A.2d 691 (1977); *People's Savings Association v. Standard Industries, Inc.,* 22 Ohio App.2d 35, 257 N.E.2d 406 (1970); *Conti-*

*nental Federal Savings & Loan Association v. Fetter,* 564 P.2d 1013 (Okla.1977); *Bellingham First Federal Savings & Loan Association v. Garrison,* 87 Wash.2d 437, 553 P.2d 1090 (1976).

**3.** The Supreme Court of Nebraska has recently discussed in depth the question of whether a due on sale clause creates an unlawful restraint on alienation. *Occidental Savings and Loan Association v. Venco Partnership,* 206 Neb. 469, 293 N.W.2d 843 (1980). The court in *Occidental* held that due on sale clauses, in and of themselves, are neither direct nor indirect restraints on alienation.

Even though our state law specifically permits the existence of due on sale clauses, a mortgage situation has been consistently held to be within the field of equity and, as such, subject to equitable defenses.[4] *Lipsey v. Crosser*, 63 S.D. 185, 257 N.W. 125 (1934); *Occidental Savings & Loan Ass'n v. Venco*, 206 Neb. 469, 293 N.W.2d 843 (1980); *Mutual Federal Savings & Loan Ass'n v. Wisconsin Wire Works*, 58 Wis.2d 99, 205 N.W.2d 762 (1973).

Briefly, appellants argue that First Federal was notified of the transfer of the property from Kelly to Hawk on August 17, 1979, when First Federal received an insurance policy renewal for the property. This renewal named Hawk as the insured. Not until March 20, 1980, however, did First Federal notify Kelly that it was exercising its foreclosure rights under the due on sale clause. At trial, Hawk testified that he spoke with First Federal's secondary marketing manager in October or November of 1979 concerning a billing problem with the aforementioned insurance policy. First Federal's vice president testified that he was unaware of appellants' property transfer until January of 1980, when an insurance bill was received naming Hawk as the insured; Hawk was then immediately notified that First Federal would not pay the policy's premium. On March 20, 1980, First Federal notified Kelly of its intention to foreclose on the property. During this period, interest rates increased substantially. Hence, it is argued that First Federal deliberately delayed in acting so as to take advantage of this increase.

The crucial hurdle appellants have failed to overcome, however, is that the due on sale clause herein involved specifically provides that only by a prior written agreement between First Federal and Hawk would First Federal be deemed to have waived its option to accelerate. The trial court stated in its findings of fact that First Federal "did not waive its right to declare the default and was not guilty of estoppel or laches in any of its actions."[5] Although this finding is somewhat conclusionary in nature, *Johnson v. Petroleum Carriers, Inc.*, 90 S.D. 295, 240 N.W.2d 114 (1976), we also do not perceive the facts to satisfy the aforementioned requirement of the mortgage agreement and, accordingly, cannot say that the trial court was clearly erroneous on this particular issue. SDCL 15–6–52(a); *Cunningham v. Yankton Clinic, P.A.*, 262 N.W.2d 508 (S.D.1978).

### III.

Appellants contend that the contract for deed, which they negotiated, did not constitute a sale or transfer as provided for in the due on sale clause. Again, the trial court entered a finding of fact otherwise.

The pertinent portion of the due on sale clause of the mortgage agreement states that First Federal may exercise its right to accelerate payment "[i]f all or any part of the property or an interest therein is sold or transferred by the borrower."

Our South Dakota Code offers guidelines on this issue:

[SDCL 43–4–1] Transfer is an act of the parties, or of the law, by which the title to property is conveyed from one living person to another.

[SDCL 43–25–16] An instrument purporting to be a grant of real property, to take effect upon condition precedent, passes the estate upon the performance of the condition.

---

4. Even though we do not reach the merits of the federal preemption question, as we read various courts' opinions on this issue, if federal preemption does, in fact, exist, state law is only prohibited from precluding the validity and exercise of due on sale clauses and is not precluded from subjecting them, when warranted, to certain factual-orientated defenses founded in principles of equity. *See First Federal Savings & Loan Association of Gadsden County v. Peterson*, 516 F.Supp. 732 (N.D.Fla.1981).

5. For further enlightenment with regard to the legal specificities of estoppel and laches, *see Golden v. Oahe Enterprises, Inc.*, 90 S.D. 263, 240 N.W.2d 102 (1976); *City of Rapid City v. Hoogterp*, 85 S.D. 176, 179 N.W.2d 15 (1970); *Cromwell v. Hosbrook*, 81 S.D. 324, 134 N.W.2d 777 (1965); *Willadsen v. Crawford*, 75 S.D. 161, 60 N.W.2d 692 (1953).

It is urged that we overturn the trial court's finding and, in its stead, adopt the rationale of the court in *Chopan v. Klinkman*, 330 So.2d 154 (Fla.App. 4th Dist. 1976). In resolving the issue we presently face, the court in *Chopan* stated:

We hold that the execution of an agreement for deed such as the one described here, because it provides for conveyance of absolute title in the future, does not constitute a sale so as to permit the appellants to foreclose their mortgage under the acceleration clause of the mortgage note.

. . . .

Our conclusion that under the circumstances of this case, the agreement for deed is not a sale so as to permit acceleration of the note and foreclosure of the mortgage, is reinforced by the following idea. While an acceleration clause is a valid contractual provision, in enforcing such a clause, a court of equity should require the showing of a clear, unequivocal right to forthwith call due the balance of the debt.

*Id.* at 155–156.

A reading of *Chopan* in its entirety, however, convinces us that the Florida court misconstrues the purpose of a due on sale clause by circumventing the applicable legal and practical realities involved.

In a contract for deed such as we have here, the installment vendor (Kelly) is said to maintain legal title to the property while the vendee (Hawk) holds equitable title and has the right to use and possession of the property. *State Highway Commission v. Miller*, 83 S.D. 124, 155 N.W.2d 780 (1968); *Renner v. Crisman*, 80 S.D. 532, 127 N.W.2d 717 (1964); *Zent v. Zent*, 281 N.W.2d 41 (N.D.1979).

Our application of this principle leads us to agree with the Supreme Court of Wisconsin when it held that even though a contract for deed only transfers equitable title to the vendee, this is a sufficient conveyance to trigger the mortgagee's rights as provided for in a due on sale clause. *Mutual Federal Savings & Loan Ass'n v. Wisconsin Wire Works*, 58 Wis.2d 99, 205 N.W.2d 762 (1973); *see also Williams v. First Federal Savings & Loan Ass'n of Arlington*, 651 F.2d 910 (4th Cir. 1981); 69 A.L.R.3d 713, § 10[b] (1976).

We hold that the trial court was not clearly erroneous when it found that the contract for deed between Kelly and Hawk fell within the purview of the sale or transfer provision of the due on sale clause. SDCL 15–6–52(a); *Cunningham v. Yankton Clinic, P.A.*, supra.

## IV.

Lastly, appellants argue that the trial court erred by awarding First Federal $3,599.05 in attorney fees and costs. First Federal's counsel submitted a statement to the court which listed its attorney fees as substantially higher than the amount actually awarded. The mortgage agreement itself provides that any decree of foreclosure shall include reasonable attorney fees and costs. We hold that, under the authority of SDCL 21–49–13(2) and SDCL 21–49–23, the trial court did not err in its award of attorney fees and costs. *See also Stanton v. Saks*, 303 N.W.2d 819, (S.D.1981); *Wright v. Wright*, 58 S.D. 612, 237 N.W. 896 (1931).

The judgment of the trial court is affirmed.

WOLLMAN, C. J., DUNN and FOSHEIM, JJ., and HOYT, Circuit Judge, concur.

HOYT, Circuit Judge, sitting for MORGAN, J., disqualified.